[No. D059282. Fourth Dist., Div. One. Nov. 17, 2011.]

JANOPAUL + BLOCK COMPANIES, LLC, et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Real Party in
Interest.

1240

COUNSEL

Oliva & Associates, Joseph L. Oliva, Matthew L. Cookson; Golub & Morales, Mitchell S. Golub and Tomas Morales for Petitioners.

No appearance for Respondent.

McCloskey, Waring & Waisman, Andrew R. McCloskey and Jeffrey N. Labovitch for Real Party in Interest.

OPINION

**BENKE, Acting P. J.**—Janopaul + Block Companies, LLC, Janopaul Block S.D. No. 1, LLC (together, Janopaul), and Golub & Morales, LLP (Golub) (together with Janopaul, petitioners), seek a writ of mandate, supersedeas or other relief to overturn the trial court's order compelling them to arbitrate pursuant to Civil Code[1] section 2860, subdivision (c) what the court characterized as a "fee dispute" between petitioners, on the one hand, and real party in interest St. Paul Fire and Marine Insurance Company (St. Paul), on the other hand, arising out of a construction defect action against Janopaul.

Petitioners contend the trial court erred in granting St. Paul's motion to compel arbitration and in denying their motion to dismiss the petition to compel arbitration because St. Paul breached its duty to defend and engaged in bad faith conduct by waiting over two years from the date of Janopaul's initial tender of defense to accept the tender. Petitioners further contend if they are allowed to prove St. Paul's breach and bad faith in the trial court in advance of arbitration, St. Paul will forfeit and/or be estopped to assert any rights under section 2860, including the right to arbitrate under section 2860, subdivision (c).

As we explain, we grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Underlying Action*

Janopaul was the owner of the historic El Cortez Hotel in San Diego (El Cortez), which Janopaul planned to restore. Janopaul in 1998 contracted with St. Paul's named insured, Ninteman Construction Company, now known as

---

[1] All statutory references are to the Civil Code.

The Sundt Companies, Inc. (together, Sundt), to serve as the general contractor for the El Cortez project (Janopaul contract). In the Janopaul contract, Sundt agreed under an express indemnity provision to defend Janopaul for claims arising from Sundt's work.

In late January 2006, the El Cortez Owners Association filed suit against Janopaul for construction defects at the El Cortez project (*Janopaul + Block Cos., LLC v. Sundt Construction Co., Inc., Southern California* (Super. Ct. San Diego County, 2011, No. GIC854799) (El Cortez action)). Janopaul timely requested that Sundt defend and indemnify it in the El Cortez action. When Sundt failed to do so, Janopaul cross-complained against Sundt for breach of express indemnity, among other causes of action.

Ultimately, the El Cortez action was consolidated with two other cases (*Janopaul Block S.D. No. 1 LLC v. Funk* (Super. Ct. San Diego County, 2011, No. GIC863887) and *El Cortez Owners Assn. v. Janopaul Block S.D. No. 1* (Super. Ct. San Diego County, 2011, No. 37-2007-00083760-CU-FR-CTL)), with the El Cortez action serving as the lead action (together, underlying action).

## B.  *Tender of Defense*

Janopaul retained Golub to represent it. In early May 2006, Golub tendered Janopaul's defense and indemnity in the underlying action to St. Paul. Janopaul's tender identified a series of insurance policies issued by St. Paul for work on the El Cortez project and included a copy of the complaint in the El Cortez action. Golub requested a response to the tender offer within 20 days.

St. Paul acknowledged receipt of the Janopaul tender in mid-May 2006. However, St. Paul stated it was investigating the matter and was then unable to "either decline or accept all or part of this tender." In connection with its investigation, St. Paul requested Janopaul provide it with the following information—most of which ostensibly was available from Sundt: copies of all contracts between Janopaul and Sundt (including Sundt's predecessor in interest); the phases its insured worked on and lot numbers; notices of completion and escrow dates on the home(s); the nature and extent of damages attributable to its insured's product/work; and any document depository created in connection with the El Cortez action.

In response, the record shows Janopaul provided St. Paul with the information in mid-July 2006, and sent followup correspondence to St. Paul on December 26, 2006, October 1, 2007, and May 14, 2008, regarding Janopaul's defense and indemnity.

On July 8, 2008, more than two years after Janopaul's original tender, Janopaul informed St. Paul that it intended to file a bad faith complaint against St. Paul because of the latter's "complete failure" to respond since mid-May 2006 to Janopaul's defense and indemnity tender. Janopaul included a draft complaint[2] against St. Paul allegedly asserting tort and contract causes of action, which Janopaul threatened to file if St. Paul did not respond conclusively to the tender within 30 days.

Three days later, St. Paul agreed to defend Janopaul under a reservation of rights. Although Janopaul had never requested appointment of independent counsel, St. Paul nonetheless agreed as follows to provide Janopaul "*Cumis* counsel":[3]

"Civil Code [section] 2860 provides the right to independent counsel where the outcome of a coverage issue may be controlled by counsel first retained by the insurer. In light of the allegations of intentional conduct, St. Paul concludes that Janopaul is entitled to independent counsel and understands that your [(Golub's)] office has been selected by the insured to represent its interests in this matter. However, St. Paul's obligation to pay defense fees and costs incurred by independent counsel is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. Thus, St. Paul agrees to contribute to the defense of Janopaul at the rate of $150 an hour for [p]artners, $135 an hour for associates and $75 an hour for paralegals."

St. Paul further stated in its reservation of rights letter that it was not obligated to reimburse Janopaul for any fees and costs Janopaul incurred pursuing any "affirmative claims" against Sundt or any other party in the

---

[2] The draft complaint was not part of the record on appeal.

[3] The phrase "*Cumis* counsel" is derived from *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 375 [208 Cal.Rptr. 494] (*Cumis*), where this court held that when "there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured." The terms "*Cumis* counsel" and "independent counsel" are synonymous. (*Assurance Co. of America v. Haven* (1995) 32 Cal.App.4th 78, 86, fn. 7 [38 Cal.Rptr.2d 25].)

underlying action; that it only agreed to pay costs and fees that were "reasonable and necessary" to Janopaul's defense in the underlying action; and demanded "to the extent reasonably possible, [Golub] segregate its billing entries so that tasks performed in defense of potentially covered claims are delineated from those associated with the uncovered and affirmative claims outlined herein."

In late August 2009, St. Paul notified Golub that it was in the process of reviewing invoices Golub had submitted for defending Janopaul in the underlying action. St. Paul indicated that St. Paul and Golub had met in January 2009 regarding St. Paul's concerns over Golub's alleged "objectionable billing practices," including "excessive hourly rates, block billing entries and tasks which did not appear reasonable and/or necessary to the defense of Janopaul."

St. Paul further noted that despite their previous meeting, Golub had not modified its billing practices, making it difficult for St. Paul to confirm whether the time Golub spent on any particular task was reasonable and necessary to the defense of Janopaul. St. Paul also disputed the billing rates Golub charged to defend Janopaul in the underlying action.

St. Paul thus invoked its alleged right to arbitrate under subdivision (c) of section 2860, claiming there was a "dispute[] concerning attorney[] fees" between the parties. Specifically, because St. Paul had previously acknowledged Golub as independent counsel to Janopaul, St. Paul claimed the attorney fee dispute "must be submitted to a single auditor for resolution. St. Paul also claimed the scope of such arbitration included "(1) the applicable rate; (2) the extent the fees submitted to St. Paul are reasonable and necessary to the defense of Janopaul; and (3) any reimbursement right St. Paul may have against Janopaul for overpayment of defense fees after the audit process is complete."

St. Paul initially requested Janopaul and Golub voluntarily agree to arbitrate. St. Paul suggested any such arbitration be stayed pending resolution of the underlying action in order for Golub to focus solely on Janopaul's defense. When Janopaul and Golub refused to arbitrate, St. Paul filed a petition to compel arbitration.

In response, Golub filed a motion to dismiss the petition to arbitrate, which Janopaul later joined. Among other things, petitioners argued that because St. Paul waited more than two years to respond to the tender of defense and indemnity and reserve its rights, St. Paul had breached the insurance

contract(s) and engaged in bad faith, and forfeited and/or was estopped to assert its alleged right to compel arbitration and select and set rates for independent counsel. St. Paul in turn moved to enforce its petition to compel arbitration.

### C. *Trial Court Proceedings*

#### 1. *The Trial Court's Initial Order*

The trial court denied petitioners' motion to dismiss the arbitration petition and granted St. Paul's competing motion to compel arbitration, ruling in part as follows:

"[Petitioners'] motion to dismiss the [arbitration petition], or in the alternative to stay the arbitration is DENIED. Arbitration is authorized pursuant to Civil Code section 2860. This section 'requires arbitration of any and all *Cumis* fee disputes unless the parties' insurance policy provides for an alternative dispute resolution procedure.' [Citation.]

"[St. Paul's] July 11, 2008 letter contains an acknowledgement of its duty to defend the entire underlying action. This letter also asserts a reservation of rights, and contends that there is no potential duty to defend or indemnify with respect to some of the causes of action. The letter finds that the right to independent counsel under section 2860 is triggered and continues: 'St. Paul . . . understands that your [(Golub's)] office has been selected by the insured to represent its interests in this matter. However, St. Paul's obligation to pay defense fees and costs incurred by independent counsel is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. . . .'

"Janopaul argues that no right to independent counsel arose because St. Paul denied a defense obligation with respect to some of the claims asserted in the underlying action. However, the right to independent counsel only arises when the insurer takes a position that some claims within the underlying action are not covered. As is clear from the reservation of rights, St. Paul nonetheless agreed to defend the entire 'mixed' action, which it is obligated to do.[4]

---

[4] We note that petitioners have *not* challenged this finding on appeal.

"Janopaul also argues that St. Paul cannot compel arbitration because its delay in accepting the tender constitutes a breach of the insuring agreement. However, the citation to <u>Intergulf Development</u> v. <u>Superior Court</u> (2010) 183 Cal.App.4th 16 [107 Cal.Rptr.3d 162] does not support this contention. Th[e instant] action addresses only the amount of fees incurred, not whether the insurer breached an obligation to appoint independent counsel.

"Finally, Janopaul argues that the arbitration is unnecessary, or at least should be stayed, until resolution of its cross-complaint for indemnity in the underlying action. However, the relief sought by petitioner in this action is unrelated to Janopaul's cross-complaint.[5]

"Petitioner [St. Paul's] petition to compel arbitration is GRANTED. [Civil Code] § 2860(c). This action is stayed pending completion of arbitration. The parties are instructed to select a mutually agreeable neutral arbitrator within one month of this hearing. The parties are further instructed to schedule an ex parte hearing if they are unable to agree on this selection. This ruling is based on the same analysis as set forth in the ruling denying the motion to dismiss, and this analysis is incorporated by reference."

### 2.  *The Trial Court's Request for Supplemental Briefing*

The trial court ordered the parties to submit supplemental briefs on the following two issues in connection with St. Paul's motion to compel arbitration and petitioners' motion to dismiss the petition:

"1. Whether the amount of attorney fees incurred after tender of the defense, but prior to acceptance of tender under a reservation of rights is an issue subject to arbitration pursuant to Civil Code section 2860? In other words, is the arbitrability of the pre-acceptance fees treated differently than the arbitrability of the post-acceptance fees?

"2. If this issue is not subject to arbitration, what is the procedural mechanism this court should utilize to decide this issue?"

### 3.  *The Trial Court Grants St. Paul's Motion to Compel Arbitration Despite Janopaul's Filing of a "Bad Faith" Action Against St. Paul*

Before supplemental briefing had been completed, Janopaul filed a "bad faith" action against St. Paul alleging causes of action for breach of contract, tortious breach of the implied covenant of good faith and fair dealing and

---

[5] Petitioners also do not challenge this finding on appeal.

declaratory relief. As we discuss in more detail *post*, Janopaul sought compensatory and punitive damages against St. Paul for the latter's alleged breach of contract/bad faith in connection with, among other concerns, St. Paul's alleged unreasonable delay in accepting the tender of defense.

The trial court on January 25, 2011, affirmed its earlier "tentative" order granting St. Paul's motion to compel arbitration, ruling in part as follows: "After entertaining the arguments of counsel, taking the matter under submission and reviewing the additional briefing, the court confirms its tentative rulings on the motion to dismiss and the petition to compel arbitration. Both parties agree that post-tender/pre-acceptance fees are subject to the same procedure as post-acceptance fees. The entire fee dispute will proceed to arbitration. Most of the arguments in defendants' supplemental briefing have already been rejected by this Court. The recent filing of the [instant] 'bad faith' action . . . does not alter this Court's determination. *The gravamen of the new action is St. Paul's failure to accept tender in a timely manner,* and the failure to pay defense fees at the full amount billed by Golub . . . . Thus, the new action simply recasts the same contentions. Any delay in accepting tender may affect the hourly rate St. Paul will be compelled to pay, and this will be adjudicated in the fee arbitration proceeding. This is not a situation where St. Paul denied a defense, or refused to indemnify Janopaul." (Italics added.)

Janopaul timely challenged the trial court's ruling by filing a petition for writ of mandate, supersedeas or other relief and a request for stay. We issued a stay of the January 25, 2011 order and an order to show cause.[6]

## DISCUSSION

### A. *Standard of Review and Governing Law*

The trial court granted St. Paul's petition to compel arbitration based on its interpretation of the scope of section 2860's mandatory arbitration provision. The proper interpretation of a statute and its application to undisputed facts, such as in the instant case, presents a question of law that is subject to our

---

[6] In June 2011, we denied in part Janopaul's opposed request for judicial notice of exhibits A through E, which Janopaul had attached to its reply brief. Exhibits A, B, and C related to an award of attorney fees in Janopaul's favor in the underlying action. We previously deferred ruling on the request for the judicial notice as it pertains to these exhibits, but now deny that request because we deem exhibits A, B and C unnecessary to our decision. With respect to exhibit D (appellant's opening brief filed in *Compulink Management Center, Inc. v. St. Paul Fire & Marine Ins. Co.* (2008) 169 Cal.App.4th 289 [87 Cal.Rptr.3d 72] (*Compulink*)) and exhibit E (respondent's brief in *Compulink*), we previously denied that request in our June 2011 order.

independent review. (See *Compulink, supra,* 169 Cal.App.4th at p. 295; see also *Gray Cary Ware & Freidenrich v. Vigilant Insurance Co.* (2004) 114 Cal.App.4th 1185, 1190 [8 Cal.Rptr.3d 475] [noting the "issue of whether subdivision (c) of section 2860 . . . encompasses disputes between an insurer and *Cumis* counsel . . . is a legal question requiring us to independently review and interpret the scope of subdivision (c)."].)

As relevant here, section 2860, subdivision (c) provides in part: "Any dispute concerning attorney's fees not resolved by [an alternative procedure set forth in the policy] shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute."

B. *Analysis*

Janopaul contends that the gravamen of its complaint against St. Paul is bad faith and breach of duty/contract. St. Paul contends the gravamen of Janopaul's complaint involves a "dispute[] concerning attorney[] fees" between an insurer and *Cumis* counsel. Based on our independent review of Janopaul's complaint, we conclude that it raises issues and claims substantially broader than merely a dispute over the amount of attorney fees, as provided in subdivision (c) of section 2860.

Indeed, Janopaul in its complaint alleged among other things that St. Paul breached the contract(s) of insurance and engaged in bad faith when it waited more than two years to accept the tender of defense and nearly three years to begin paying for that defense. As a result of such conduct, Janopaul alleged St. Paul has forfeited and/or is estopped from asserting all rights under the policies of insurance, including any rights under section 2860. In addition to compensatory damages, Janopaul sought exemplary damages and attorney fees and costs from St. Paul.

In its declaratory relief cause of action, Janopaul sought relief as follows:

"For a declaratory judgment that the delay . . . constitutes a per se breach by ST. PAUL of the terms of its policies and a forfeiture of its rights to enforce any terms of the policies against the insured, including without limitation, any right to seek arbitration of defense fees and costs;

". . . For a declaratory judgment that ST. PAUL'S silence of over two years concerning section 2860 and failure to object to the Golub Firm rates during that time and [Janopaul's] reasonable reliance on that silence estops ST. PAUL from seeking arbitration of defense fees and costs; [and]

". . . For a declaratory judgment that ST. PAUL'S silence of over two years after knowing all operative facts and rights constitutes a waiver by ST. PAUL of its right to seek arbitration of defense fees and costs . . . ."

■ Significant to the instant appeal, an "[u]nreasonable delay in paying policy benefits . . . is an actionable withholding of benefits which may constitute a breach of contract as well as bad faith giving rise to damages in tort. [Citations.] The general measure of damages for breach of duty to defend consists of the insured's cost of defense in the underlying action, including attorney fees. [Citation.] *Breach of duty to defend also results in the insurer's forfeiture of the right to control defense of the action or settlement, including the ability to take advantage of the protections and limitations set forth in section 2860.* [Citations.]" (*Intergulf Development LLC v. Superior Court, supra,* 183 Cal.App.4th at p. 20, italics added (*Intergulf*); see *The Housing Group v. PMA Capital Ins. Co.* (2011) 193 Cal.App.4th 1150, 1155–1156 [123 Cal.Rptr.3d 603] [" 'To defend [an insured] meaningfully, the insurer must defend immediately . . .' [because] '[i]mposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf. [Citation.]' [Citation.]" (citation omitted)].)

When Janopaul filed its bad faith action for breach of contract, tortious breach of the implied covenant of good faith and fair dealing and for declaratory relief, Janopaul put St. Paul on notice that it was treating St. Paul's delay in accepting Janopaul's tender as a "total breach of the duty to defend." (*Intergulf, supra,* 183 Cal.App.4th at p. 21; see *Coughlin v. Blair* (1953) 41 Cal.2d 587, 599 [262 P.2d 305] [filing suit gave defendant notice that plaintiff viewed its failure to perform as a total breach of contract].)

■ Because issues regarding the duty to defend, breach and bad faith in connection with Janopaul's tender must be decided in the trial court (see *Intergulf, supra,* 183 Cal.App.4th at p. 22; *Buss v. Superior Court* (1997) 16 Cal.4th 35, 49 [65 Cal.Rptr.2d 366, 939 P.2d 766]), and because these issues had *not* been resolved *before* the trial court granted St. Paul's motion under section 2860, subdivision (c), we conclude the trial court erred when it prematurely stayed the instant case and ordered the parties to arbitrate their "fee dispute." (See *Atmel Corp. v. St. Paul Fire & Marine* (N.D.Cal. 2005) 426 F.Supp.2d 1039, 1047 (*Atmel*) ["as numerous courts have recognized, '[t]o take advantage of the provisions of [section] 2860, an insurer must meet its duty to defend and accept tender of the insured's defense, subject to a reservation of rights.' "].)

In reaching our decision, we disagree with St. Paul's argument that Janopaul filed what St. Paul describes as a "retaliatory bad faith [complaint] to *avoid* [section] 2860 arbitration and *insulate* Golub's [alleged] excessive fees from judicial scrutiny." (Italics added.) Our decision in the instant case will allow Janopaul to do neither.

Instead, our decision merely requires a preliminary determination in the trial court whether St. Paul had a duty to defend Janopaul and if so, whether St. Paul breached that duty and engaged in bad faith conduct. *If* these (and other related) issues are resolved in favor of St. Paul and the dispute between it and Janopaul ultimately boils down to the amount of attorney fees St. Paul owes for Janopaul's defense in the underlying action, then at that time St. Paul can move to arbitrate that dispute under subdivision (c) of section 2860, subject of course to any potential defenses of petitioners (e.g., forfeiture or estoppel).[7] Thus, our decision by no means *avoids* or *insulates* the issue of the amount of fees charged by Golub in defending Janopaul in the underlying action. Instead, our decision requires *postponing* the determination of that issue until the threshold questions of duty to defend, breach and bad faith are resolved in the trial court.

We also reject St. Paul's argument that requiring issues concerning the duty to defend and breach of duty/bad faith to be decided in the trial court before arbitrating a dispute over the amount of fees owed *Cumis* counsel pursuant to subdivision (c) of section 2860 will lead to an "unprecedented expansion" of our decision in *Intergulf.*

In *Intergulf* we reversed an order requiring the parties to arbitrate under subdivision (c) of section 2860 after the insurer waited about eight months to accept the tender of defense but allegedly refused to appoint *Cumis* counsel to represent the insured in the underlying construction defect action. (*Intergulf, supra,* 183 Cal.App.4th at p. 18.) After the insured filed a bad faith action and shortly before trial on that action, the insurer moved to compel arbitration under subdivision (c) of section 2860, characterizing the dispute between it and the insured as a " '*Cumis* Fee Dispute.' " (183 Cal.App.4th at p. 19.)

In connection with its petition, the insurer in *Intergulf*—much like St. Paul here, argued that the insured's counsel had charged legal fees far in excess of those actually paid by the insurer in the normal course of business. Relying on *Compulink,* the trial court in *Intergulf* granted the insurer's motion to compel arbitration. (*Intergulf, supra,* 183 Cal.App.4th at pp. 19–20.) This court summarily denied the insured's petition for writ of mandate. However, our Supreme Court granted the insured's petition for review and transferred the matter back to this court with directions to vacate the order denying mandate and issue an order to show cause why the relief sought should not be granted. (*Id.* at p. 20.)

---

[7] In light of our decision, we deem it unnecessary in this proceeding to resolve whether these defenses apply to a fee dispute subject to arbitration under subdivision (c) of section 2860, and if so, whether St. Paul forfeited, or is estopped from asserting, any such rights.

In distinguishing the facts and holding in *Compulink*, on which the trial court in *Intergulf* had relied and on which St. Paul here relies, this court in *Intergulf* recognized *Compulink* "did not involve the preliminary question of duty to defend or disputes over if and when the insurer recognized the insured's right to select independent counsel. Instead, [*Compulink* was a] dispute[] over the *amount* to be paid independent counsel." (*Intergulf, supra,* 183 Cal.App.4th at pp. 21–22.)[8] In *Intergulf* we noted that the insurer in *Compulink* had in fact allowed the insured to select independent counsel to defend the insured in the third party suit, a fact that was in dispute in *Intergulf*. (183 Cal.App.4th at p. 22.)

We agree with *Compulink* and *Intergulf* that to the extent there is a dispute between the parties concerning the *amount* of *Cumis* counsel fees owed in the defense of an insured in a third party suit, that dispute ultimately must be resolved by arbitration as required by subdivision (c) of section 2860. (See also *Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1474 [78 Cal.Rptr.3d 483] [subd. (c) of § 2860 does not confer jurisdiction on courts to hear disputes concerning *Cumis* fees].)

However, when, as here and as in *Intergulf*, an insured raises in a bad faith action the duty to defend, breach and bad faith by an insurer, those issues must be resolved first in the trial court before any section 2860, subdivision (c) arbitration because a determination of one or more of those issues in favor of the insured *may*[9] eliminate altogether the need for arbitration under section 2860. (See *Atmel, supra,* 426 F.Supp.2d at p. 1047.)

Our reading of *Compulink* does not suggest a contrary rule. Indeed, the issue there was whether subdivision (c) of section 2860 applied "*only* in cases where the *sole* issue is independent counsel's billing rate or hours." (*Compulink, supra,* 169 Cal.App.4th at p. 296, italics added.) That argument was expressly rejected by the Court of Appeal in *Compulink* (*id.* at p. 300) and tacitly by this court in *Intergulf* (*Intergulf, supra,* 183 Cal.App.4th at p. 21). *Compulink* did not address the focus of the instant case and *Intergulf*, which involved the *timing* of arbitration under subdivision (c) of section 2860 in the context of a bad faith action.

---

[8] In fact, the parties in *Compulink* initially had stipulated to arbitrate their dispute over the amount of *Cumis* fees owed by the insurer. (*Compulink, supra,* 169 Cal.App.4th at p. 293, fn. 2.) However, the insured filed a lawsuit to recover its fees after the insurer allegedly dragged its proverbial feet in reaching an agreement to arbitrate. (*Ibid.*)

[9] We say "may" because we do not decide in this proceeding whether the delay by St. Paul in accepting the tender of defense and reserving its rights constituted a breach of duty/bad faith.

## DISPOSITION

Let a writ issue directing the trial court to vacate its January 25, 2011 order granting St. Paul's motion to compel arbitration in connection with its arbitration petition and enter a new order denying that motion to compel. Petitioners are entitled to their costs in this writ proceeding. The stay issued on March 16, 2011, is vacated.

Huffman, J., and Nares, J., concurred.