[No. B195281. Second Dist., Div. Seven. June 17, 2008.]

JAY B. LONG, Plaintiff and Appellant, v.
CENTURY INDEMNITY COMPANY et al., Defendants and Respondents.

1462

## COUNSEL

Jay B. Long, in pro. per., for Plaintiff and Appellant.

Berman & Aiwasian and Steven M. Haskell for Defendants and Respondents.

## OPINION

**PERLUSS, P. J.**—After agreeing to provide a defense to its insured under a reservation of rights, an insurer elects not to have counsel representing its own interests participate in the third party action and instead allows counsel selected by the insured to conduct and control the entire defense. Is a subsequent fee dispute between the insured's counsel and the insurer subject to mandatory arbitration under Civil Code section 2860, subdivision (c),[1] which applies whenever an insurer, because of a conflict of interest, has a duty to provide independent (*Cumis*) counsel to represent its insured? (See *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494].)

Contending the answer to this question must be no, Jay B. Long argues the trial court erred in dismissing his first amended complaint against Century Indemnity Company and eight other insurance companies[2] seeking to recover additional fees for the representation of his client, G. Harris International (Harris), in an environmental cleanup lawsuit. In fact, the correct answer to the question is yes, provided the reservation of rights creates a conflict of

---

[1] Statutory references are to the Civil Code.

[2] The additional insurance companies named in Long's first amended complaint and parties to this appeal are CCI Insurance Company, Insurance Company of North America, ACE Property and Casualty Insurance Company, ACE American Insurance Company, ACE Indemnity Insurance Company, ACE USA Insurance Company, ACE INA Insurance Company and CIGNA Property and Casualty Insurance Company.

interest that trigger the insurer's duty to provide independent counsel. Because Long neither alleges nor suggests he could allege the absence of such a conflict of interest between Harris and its insurer, we affirm the order of dismissal entered in this case after the trial court sustained without leave to amend the demurrer to Long's first amended complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Harris, a recycling company, was sued in 1996 by California's Department of Toxic Substances Control as part of a large hazardous waste cleanup action filed in the United States District Court for the Eastern District of California (the mobile smelting site litigation). Harris's attorney, Long, tendered the company's defense to Insurance Company of North America (INA), which had issued a comprehensive general liability policy to Harris in 1979 or 1980.[3] Although initially refusing to provide a defense, INA ultimately agreed to do so pursuant to a reservation of rights. The nature of INA's reservation of rights is not revealed in the record on appeal; the reservation of rights letter itself is not attached to any of Long's pleadings; and its content is not described by the parties.

In 1997 INA asked Long, who had represented Harris in a related matter in 1994, to defend Harris in the mobile smelting site litigation; Long was also defending another party in the action. INA, however, was unwilling to pay Long the hourly rate he requested, contending Long was subject to the rate cap in section 2860, subdivision (c), applicable when a conflict of interest arises that creates a duty on the part of the insurer to provide independent counsel to its insured.[4] Unable to resolve their dispute, Long and INA agreed Long would undertake the representation and would be paid the capped hourly rate INA contended was applicable, with Long reserving his right to seek payment of the higher rate (his normal hourly rate for this type of work) at an unspecified later date.

By mid-July 2002 the mobile smelting site litigation had been settled as to Harris. In July 2005 Long demanded INA pay the additional attorney fees he claimed were due for his representation of Harris—that is, the difference

---

[3] According to Long, although Century Indemnity Company asserts it is the successor to INA for the policy and Harris's claim, there apparently is a question as to which of the defendant insurance companies is the actual successor to INA. That point is not material to the issue on appeal. Accordingly, for convenience, the insurance company defendants are collectively referred to as INA.

[4] The insurer's obligation to pay fees to independent counsel selected by its insured is limited to the rates "actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended." (§ 2860, subd. (c).)

between the amount paid by INA pursuant to the rate cap specified in section 2860, subdivision (c), and Long's normal hourly rate. Without conceding the mandatory arbitration provision in section 2860 applied, Long also demanded that INA submit the dispute concerning hourly rates to arbitration. INA refused Long's demand for payment and declined to submit the matter to arbitration, asserting Long's arbitration demand, made more than three years after the conclusion of the third party litigation, was untimely.

On February 27, 2006, pursuant to an assignment of rights from Harris, Long filed a lawsuit against INA asserting causes of action for breach of contract based upon the insurance policy and breach of the implied covenant of good faith and fair dealing. Long also asserted causes of action for breach of his fee agreement and for common count and quantum meruit. Long sought damages in excess of $193,252.50—largely, the difference between the amount he was paid by INA and the amount he would have been paid at the rate he sought.[5]

INA demurred to the complaint asserting, in part, each of Long's claims was in effect a fee dispute subject to mandatory arbitration pursuant to section 2860, subdivision (c). Rather than oppose the demurrer, Long filed an amended complaint adding allegations in an attempt to demonstrate section 2860 was inapplicable. Long alleged, "At the time of entering into the Written Fee Agreement [by which Long was retained], [INA] refused to pay the full reasonabl[e] hourly of [Long]. [INA] asserted that, while [it] denied that a conflict of interest existed that triggered the independent counsel provisions of . . . Section 2860, [INA was] entitled to a cap on [Long's] hourly rate pursuant to the exact independent counsel provisions of . . . Section 2860 that they denied were applicable." Long also alleged he had defended Harris in 2003 in a different environmental cleanup action in which INA had initially refused to provide Harris a defense. After Long obtained Harris's

---

[5] Long asserts his damages include recovery of the attorney fees Harris incurred in obtaining its benefits under the insurance policies in accordance with *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693 P.2d 796] ("[w]hen an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense")—a claim that would not fall within the purview of section 2860. However, although Long generally alleged INA "intentionally and deliberately refused to provide a defense to G. Harris International," the gravamen of the breach-of-the-implied-covenant claim is Long was not paid the hourly rate he sought. Indeed, elsewhere in his complaint, Long has alleged not only that INA retained him to provide a defense for Harris but also that he "performed the requested legal services in an exemplary manner." Long's dispute with INA plainly is over the amount of fees paid, not whether Long would defend Harris in the third party environmental cleanup litigation.

dismissal, INA agreed to reimburse all of Harris's attorney fees and costs without asserting the section 2860 rate cap was applicable.

The trial court concluded it had no jurisdiction to hear what was essentially an attorney fee dispute under section 2860, subdivision (c), and sustained INA's demurrer to the first amended complaint without leave to amend. The court rejected Long's principal argument, which Long repeats on appeal, that section 2860, subdivision (c), is inapplicable—whether or not a conflict of interest exists between the insured and insurer because of the insurer's reservation of rights—when only counsel selected by the insured and approved by the insurer represents the insured in the underlying litigation: "[T]he law is real clear. It says the jurisdiction lies in arbitration only and section 2860 could not be more specific. This is a fight over a fee dispute pursuant to [*Cumis*] counsel. . . . I know you've tried to make it into something else, which is very creative on your part, but it's just not here . . . ."

## DISCUSSION

### 1. *Standard of Review*

On appeal from an order dismissing a complaint after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 998 [27 Cal.Rptr.3d 583].) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry*, at p. 967.) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116, 1120 [100 Cal.Rptr.2d 246].)

" 'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his [or her] complaint . . . ." ' " (*Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at p. 970.) Leave to amend may be granted on appeal even in the absence of a request by the plaintiff to amend the complaint. (*Id.* at p. 971; see Code Civ. Proc., § 472c, subd. (a).) We determine whether the plaintiff has shown "in what manner he [or she] can amend [the] complaint and how that amendment

will change the legal effect of [the] pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737]; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569] ["plaintiff has the burden of proving that an amendment would cure the defect"].) "[L]eave to amend should *not* be granted where . . . amendment would be futile." (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685 [22 Cal.Rptr.2d 807].)

2. *The Trial Court Properly Ruled Section 2860 Applied to the Claims Alleged in the First Amended Complaint, Thus Depriving the Court of Jurisdiction over the Action*

 a. *The duty to provide independent counsel*

 Generally, an insurer owing a duty to defend an insured, arising because there exists a potential for liability under the policy, "has the right to control defense and settlement of the third party action against its insured, and is . . . a direct participant in the litigation." (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1407 [120 Cal.Rptr.2d 392] (*Gafcon*); see *Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168] ["carrier must defend a suit which *potentially* seeks damages within the coverage of the policy . . ."].) The insurer typically hires defense counsel who represents the interests of both the insurer and the insured. (*Assurance Co. of America v. Haven* (1995) 32 Cal.App.4th 78, 84 [38 Cal.Rptr.2d 25]; *Gafcon*, at p. 1406 ["attorney retained by an insurance company to defend its insured under the insurer's contractual obligation to do so represents and owes a fiduciary duty to both the insurer and insured"].) In this "usual tripartite relationship existing between insurer, insured and counsel, there is a single, common interest shared among them. Dual representation by counsel is beneficial since the shared goal of minimizing or eliminating liability to a third party is the same." (*San Diego Federal Credit Union v. Cumis Ins. Society, Inc., supra*, 162 Cal.App.3d at p. 364 (*Cumis*).)

Under certain circumstances, however, a conflict of interest or potential conflict of interest may impose upon the insurer a duty under section 2860 to provide independent counsel, commonly referred to as "*Cumis* counsel,"[6] for the insured.[7] "Usually, these conflicts involve the insured trying to obtain

---

[6] The term "*Cumis* counsel" derives from the holding of *Cumis, supra*, 162 Cal.App.3d 358, which recognized the insurer's duty to appoint independent counsel for its insured under certain circumstances. The Legislature codified that duty in 1987 by enacting section 2860. (Stats. 1987, ch. 1498, § 4, p. 5779; see *Assurance Co. of America v. Haven, supra*, 32 Cal.App.4th at p. 84.)

[7] Section 2860 provides, "(a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the

coverage and the insurer trying to avoid it." (*Assurance Co. of America v. Haven, supra,* 32 Cal.App.4th at p. 84.) "Although issues of coverage under the policy are not actually litigated in the third party suit, this does not detract from the force of these opposing interests as they operate on the attorney selected by the insurer, who has a dual agency status [citation]." (*Cumis, supra,* 162 Cal.App.3d at pp. 364–365.) The attorney, who typically has a long-standing relationship with the insurer and none with the insured (including little prospect of future work), may be forced to make "numerous and varied" decisions that could "help[] one of his clients concerning insurance coverage and harm[] the other." (*Id.* at pp. 365, 364, fn. 3 [" 'there has been recognition that, in reality, the insurer's attorneys may have closer ties with the insurer and a more compelling interest in protecting the insurer's position, whether or not it coincides with what is best for the insured' "].) Consequently, in order to " 'eliminate the ethical dilemmas and temptations that arise along with conflict in joint representations,' " the insurer is required to provide its insured with independent counsel of the insured's choosing "who *represents* the insured, not the insurer"; and the insured may thereafter control the defense of the case. (*Assurance Co. of America,* at pp. 87, 83;

insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. An insurance contract may contain a provision which sets forth the method of selecting that counsel consistent with this section. [¶] (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits. [¶] (c) When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications . . . . The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. This subdivision does not invalidate other different or additional policy provisions pertaining to attorney's fees or providing for methods of settlement of disputes concerning those fees. Any dispute concerning attorney's fees not resolved by these methods shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute. [¶] (d) When independent counsel has been selected by the insured, it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning the action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action. . . . [¶] (e) The insured may waive its right to select independent counsel . . . . [¶] (f) Where the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation. Counsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured. Nothing in this section shall relieve the insured of his or her duty to cooperate with the insurer under the terms of the insurance contract."

see *J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1018 [278 Cal.Rptr. 64, 804 P.2d 689] ["purpose of requiring *Cumis* counsel is to protect an *insured's* interest"]; *State Farm Fire & Casualty Co. v. Superior Court* (1989) 216 Cal.App.3d 1222, 1226 [265 Cal.Rptr. 372] ["*Cumis* rule requires complete independence of counsel . . . ."].)[8]

■ Although an insurer's agreement to provide a defense pursuant to a reservation of rights may give rise to a conflict of interest requiring appointment of independent or *Cumis* counsel, it is not inevitable.[9] Section 2860, subdivision (b), provides, "For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits." Thus, when the reservation of rights is based on coverage disputes that have nothing to do with the issues being litigated in the underlying action—for example, whether the defendant is an "insured" under the insurance policy (see *McGee v. Superior Court* (1985) 176 Cal.App.3d 221, 227–228 [221 Cal.Rptr. 421] [reservation of rights based on resident relative exclusion in automobile liability policy])—there is no conflict of interest, and no duty to appoint independent counsel. (See *Gafcon, supra*, 98 Cal.App.4th at p. 1422; *Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2000) 79 Cal.App.4th 114, 130–131 [93 Cal.Rptr.2d 534].)[10] Conversely, when the facts on which resolution of the reserved coverage dispute depends are at

---

[8] Although *Cumis* counsel does not owe any fiduciary duty to the insurer, *Cumis* counsel, as well as the insured, owe a statutory duty to the insurer "to disclose to the insurer all information concerning the action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action." (§ 2860, subd. (d); see *Assurance Co. of America v. Haven, supra*, 32 Cal.App.4th 78 [liability insurer may sue insured's independent counsel under § 2860 for negligence in failing to inform and consult with insurer in timely manner, disclose nonprivileged information and cooperate in exchanging information].)

[9] An insurer may satisfy its duty to defend its insured in a third party action without waiving its right to assert it is not obligated to indemnify the insured against any judgment on the ground the claim is not covered under the policy by properly notifying the insured it is providing the defense under a reservation of rights. (See *Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489, 497 [106 Cal.Rptr.2d 535, 22 P.3d 313]; see also *Gray v. Zurich Ins. Co., supra*, 65 Cal.2d at p. 279.)

[10] An insurer's reservation of the right to seek reimbursement of defense costs allocable to noncovered claims—a relatively common occurrence—does not involve an issue that will be litigated in the underlying action and, therefore, does not by itself trigger the insurer's duty to appoint independent counsel. (*James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, 1108–1109 [111 Cal.Rptr.2d 181].)

issue in the underlying action, independent counsel must be appointed because counsel selected and controlled by the insurer could determine the outcome of those issues in the third party action. (See *Gafcon*, at p. 1394 [test is whether outcome of coverage issue can be influenced by counsel controlled by insurer].)

Perhaps the most common situation in which a conflict of interest exists and independent or *Cumis* counsel is required occurs when the insured's allegedly wrongful conduct could be found to be intentional, with coverage thus depending on the ultimate characterization of the insured's actions. Both the insured and the insurer, of course, share a common interest in defeating the claims. But if liability is found, their interests diverge in establishing the basis for that liability. (*Cumis, supra,* 162 Cal.App.3d at p. 364 ["[o]pposing poles of interest are represented on the one hand in the insurer's desire to establish in the third party suit the insured's 'liability rested on intentional conduct' [citation], and thus no coverage under the policy, and on the other hand in the insured's desire to 'obtain a ruling . . . such liability emanated from the nonintentional conduct within his insurance coverage' "].) Other circumstances that may create a conflict of interest requiring the insurer to provide independent counsel are "where the insurer insures both the plaintiff and the defendant [citation]; . . . where the insurer has filed suit against the insured, whether or not the suit is related to the lawsuit the insurer is obligated to defend [citation]; [and] where the insurer pursues settlement in excess of policy limits without the insured's consent and leaving the insured exposed to claims by third parties . . . ." (*James 3 Corp. v. Truck Ins. Exchange, supra,* 91 Cal.App.4th at p. 1101.)

■ Although the insurer is responsible for paying *Cumis* counsel, section 2860, subdivision (c), limits the insurer's obligation "to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended." Any dispute concerning attorney fees to be paid *Cumis* counsel must be submitted to arbitration unless an alternative dispute resolution procedure is required by the insurance policy. (§ 2860, subd. (c).)

> b. *The applicability of section 2860 does not depend on the insurer's retention of counsel to represent its interests in the third party action*

■ As discussed, an insurer has a duty to allow its insured to select independent counsel—and section 2860's fee cap and mandatory arbitration of fee disputes apply—whenever a conflict or potential conflict of interest between the insurer and the insured exists or may arise with respect to third

party litigation. Although at least implicitly recognizing this general principle, Long insists, under the express language of section 2860, as well as the policies it advances, subdivision (c)'s fee cap and arbitration requirement are not applicable, even if such a conflict exists, unless the insurer has first retained defense counsel of its own choosing (referred to by Long as "panel counsel"), who might steer the third party litigation in the insurer's favor.[11] To be sure, as Long asserts, section 2860, subdivision (b) states a conflict may exist "when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel *first retained by the insurer for the defense of the claim*" (italics added), arguably suggesting the duty to provide *Cumis* counsel may be contingent upon the insurer's retention of its own counsel. But the potential conflict described in subdivision (b) exists because the interests of the insurer and its insured diverge, thereby precluding the use of counsel (absent a waiver by the insured) who purports to jointly represent the interests of both insurer and insured. It is not the presence of the insurer-selected attorney that creates the conflict; rather, the existence of the conflict or potential conflict creates the need for "independent" or *Cumis* counsel—an attorney who owes his or her allegiance solely to the insured. Even if the insurer forgoes its right to its own representation under these circumstances, the insured retains its right to independent counsel that it selects and controls.

■ Moreover, "Civil Code section 2860 does not purport to address any and all conflicts that might arise: 'It does not clearly state when the right to independent counsel vests.' [Citation.] Civil Code section 2860, subdivision (b) is 'an example of a conflict of interest which may require appointment of independent counsel. It is not, however, the only circumstance in which *Cumis* counsel may be required. The language of Civil Code section 2860 "does not preclude judicial determination of conflict of interest and duty to provide independent counsel such as was accomplished in *Cumis* so long as that determination is consistent with the section." ' " (*Gafcon, supra,* 98 Cal.App.4th at p. 1421; see *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993)

[11] In addressing the scope of section 2860 we are guided by well-established principles of statutory construction. " ' "[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import . . . . The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." ' " (*Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 186–187 [10 Cal.Rptr.2d 208, 832 P.2d 924]; see *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 543 [67 Cal.Rptr.3d 330, 169 P.3d 559].)

20 Cal.App.4th 1372, 1395 [25 Cal.Rptr.2d 242] [attorney control of outcome of coverage dispute not only circumstance in which *Cumis* counsel may be required].)

Similarly, although section 2860, subdivision (f), addresses *Cumis* counsel's and the insurer's counsel's right to participate in all aspects of the litigation and their obligation to cooperate with each other, there is nothing in subdivision (f) that makes the retention of separate counsel to represent the insurer's interests in the third party action a prerequisite to triggering the insurer's duty to provide *Cumis* counsel. Indeed, subdivision (f) and section 2860, subdivision (d), which imposes a duty on *Cumis* counsel and the insured to timely disclose nonprivileged relevant information, "furnish a remedy for insurers believing *Cumis* counsel is not representing the insured in a reasonably competent fashion." (*United States Fidelity & Guaranty Co. v. Superior Court* (1988) 204 Cal.App.3d 1513, 1526 [252 Cal.Rptr. 320]; see *Assurance Co. of America v. Haven, supra*, 32 Cal.App.4th at p. 89 [same].) The insurer, however, may elect not to retain counsel to protect its own interest, and such election does not obviate the need to provide *Cumis* counsel if a conflict or potential conflict exists.

Long also notes the *Cumis* court itself described the issue presented as "whether an insurer is required to pay for independent counsel for an insured *when the insurer provides its own counsel* but reserves its right to assert noncoverage at a later date" (*Cumis, supra*, 162 Cal.App.3d at p. 361, italics added) and argues the basic rationale for the decision supports his position. Although Long is correct the *Cumis* court framed the issue in these terms, the facts before the court presented that specific situation. The animating principle of the decision, however, is protecting the insured when a conflict of interest between insurer and insured arises in third party litigation and counsel beholden to the insurer, if retained, might be faced with divided, but unequal loyalties. If an insurer can identify, based upon the tender of its insured's defense alone, a potential coverage dispute that turns on the evaluation of its insured's conduct in the underlying litigation, it would make little sense to require the insurer to retain counsel before its duty to provide independent counsel to represent its insured's interests arises. Indeed, the *Cumis* court advised "the existence of a conflict of interest should be identified early in the proceedings so it can be treated effectively before prejudice has occurred to either party." (*Cumis*, at p. 371, fn. 7.) Quite simply, the duty exists when the potential conflict arises, whether or not the insurer has—or will—retain its own counsel.

*County of San Bernardino v. Pacific Indemnity Co.* (1997) 56 Cal.App.4th 666 [65 Cal.Rptr.2d 657], on which Long relies, does not support his argument separate counsel must be retained to trigger application

of section 2860. Although in that case the court did hold section 2860 was inapplicable to a dispute over the rate the insured's counsel was to be paid, the insurer had conceded " 'no *Cumis* type conflict arose out of' its reservation of rights." (*County of San Bernardino*, at p. 692.) Indeed, the trial court never "address[ed] whether a conflict of interest was created and the issue 'was not even briefed.' " (*Id.* at p. 692, fn. 23.) The insurer's concession merely reinforces the principle that section 2860 does not apply if there is no conflict of interest between the insurer and its insured, whether counsel is selected by the insurer or the insured. The case in no way questions the corollary principle that governs here: If the insured (Harris) has a right to independent, *Cumis* counsel, section 2860 applies whether or not the insurer has elected to forgo its right to be represented in the third party litigation.

■ Finally, Long argues, even if section 2860, subdivision (c), applies to his fee dispute with INA, INA waived its right to insist the matter be arbitrated when it refused his July 2005 arbitration demand.[12] In light of the statutory mandate that all fee disputes between an insured's *Cumis* counsel and the insurer be resolved by arbitration (§ 2860, subd. (c)), however, the issue is not INA's entitlement to compel arbitration but the Legislature's allocation of decisionmaking responsibility between the courts and arbitrators. (See *Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800, 803 [19 Cal.Rptr.2d 138] ["[T]he California Legislature has spoken. It has decided that *within the California courts* these *Cumis* fee issues are to be decided in an arbitration forum, not the *state's* judicial forum."].) Thus, even if INA's rejection of the request for arbitration on the ground it was untimely would constitute a waiver in the context of contractual arbitration—a proposition certainly not free from doubt (see, e.g., *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782 [191 Cal.Rptr. 8, 661 P.2d 1088] [" '[A]rbitration is strongly favored. Courts will closely scrutinize any claims of waiver [citations] and " 'indulge every intendment to give effect to [arbitration] proceedings.' " ' "])—if Long was *Cumis* counsel, the insurer's refusal to voluntarily participate in arbitration as required by section 2860, subdivision (c), does not confer jurisdiction on the courts to hear Long's attorney fee dispute. Rather than file a lawsuit, Long's appropriate remedy was a petition to compel arbitration. (Cf. *Allstate Ins. Co. v. Gonzalez* (1995) 38 Cal.App.4th 783, 792 [45 Cal.Rptr.2d 491] [burden of properly initiating arbitration is with the plaintiff or claimant].)

---

[12] Of course, if section 2860, subdivision (c), applies to Long's representation of Harris in the mobile smelting site litigation, his lawsuit for fees in excess of subdivision (c)'s capped hourly rate is necessarily without merit.

c. *Because Long fails to show how he can further amend his pleading to avoid application of section 2860, subdivision (c), leave to amend was properly denied*

As *County of San Bernardino v. Pacific Indemnity Co., supra,* 56 Cal.App.4th 666, illustrates, section 2860 is inapplicable when no conflict of interest exists between the insurer and its insured, even if the insured is represented by counsel selected by the insured rather than the insurer: "[B]y its terms, section 2860 applies only where a 'conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel for the insured . . . .' " (*County of San Bernardino,* at p. 693.) Yet Long has at no time alleged, nor sought leave to amend his first amended complaint to allege, INA's reservation of rights did not create an actual or potential conflict of interest that triggered application of section 2860.[13] Instead, in both the trial court and in his opening and reply briefs on appeal, Long steadfastly insists—erroneously, as we have explained in the preceding section—that, because he was sole defense counsel representing Harris in the mobile smelting site litigation, there was no "*Cumis* conflict of interest."

Long's allegation INA "denied that a conflict of interest existed that triggered the independent counsel provisions of . . . Section 2860" notwithstanding its insistence it was entitled to that section's rate cap, standing alone, is simply insufficient to demonstrate there was no conflict of interest triggering INA's duty to provide *Cumis* counsel. (*Estate of Archer* (1987) 193 Cal.App.3d 238, 245 [239 Cal.Rptr. 137] [plaintiff "must allege ultimate facts, not conclusions of law," that "as a whole apprise[] the adversary of the factual basis of the claim"].) Similarly inadequate is Long's offer in his reply brief to make "a conclusory allegation that these facts [as currently alleged in the first amended complaint] demonstrate the lack of existence of the *Cumis* conflict of interest." Although he includes a perfunctory request for an opportunity to cure any perceived pleading deficiency in the first amended complaint, because Long does not suggest an ability to cure—for example, by alleging facts demonstrating the issues presented by INA's reservation of rights differed from, or were extrinsic to, those issues in the litigation, and thus any lawyers who may have been retained by INA could not impact coverage by the manner in which they defended the case (see *Gafcon, supra,* 98 Cal.App.4th at pp. 1422–1423)—we affirm the trial court's order sustaining INA's demurrer without leave to amend. (See *Goodman v. Kennedy, supra,* 18 Cal.3d at p. 349; *Vaillette v. Fireman's Fund Ins. Co., supra,* 18 Cal.App.4th at p. 685.)

---

[13] As previously noted, Long did not attach the reservation of rights letter to his original or amended complaint and nowhere describes the basis upon which INA declined to provide Harris a full defense in the mobile smelting site litigation.

## DISPOSITION

The order dismissing the action is affirmed. The respondent insurance companies are to recover their costs on appeal.

Woods, J., and Zelon, J., concurred.

A petition for a rehearing was denied July 10, 2008, and appellant's petition for review by the Supreme Court was denied September 17, 2008, S165484.