Filed 9/23/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TERRY ANN SWANSON, | B240016 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC055177) |
| v. | |
| STATE FARM GENERAL INSURANCE COMPANY, | |
| Defendant and Respondent. | |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Laura A. Matz, Judge.  Affirmed.

        Blasco & Hawekotte General Counsel Services and Richard E. Blasco for Plaintiff and Appellant.

        Robie & Matthai and Kyle Kveton for Defendant and Respondent.

_____

## INTRODUCTION

An insurer agrees to provide a defense with a reservation of rights and approves independent counsel selected by the insured to represent the insured in an underlying tort action, pursuant to Civil Code section 2860 and *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 (*Cumis*).  The insurer subsequently withdraws all reservations of rights and coverage defenses that give rise to the insured's right to *Cumis* counsel.[1]  Must the insurer continue to pay the insured's *Cumis* counsel after the insurer's withdrawal of the *Cumis*-triggering reservations eliminated the conflict that created the need for *Cumis* counsel?  We answer this question in the negative.

Plaintiff Terry Ann Swanson appeals from a judgment entered after the trial court had granted a motion for summary judgment in favor of defendant State Farm General Insurance Company (State Farm).  The trial court determined that State Farm did not breach its insurance contract with Swanson by refusing to pay any attorneys' fees incurred by her *Cumis* counsel after State Farm withdrew its reservation of rights.  We affirm.

## FACTUAL BACKGROUND

State Farm issued Swanson Homeowners Insurance Policy No. 71-71-9553-0 (the Policy) that provided personal and general liability coverage for her real property in La Crescenta, for the period of May 12, 2004 to May 12, 2006.  The Policy provided that if a third party brought a suit against an insured for damages for covered "bodily injury" or "property damage" caused by an "occurrence," State Farm would "provide a defense at our expense by counsel of our choice."  (Bold omitted.)

---

[1]    Courts often refer to the independent counsel hired by the insured as "*Cumis* counsel," a term we will use in this opinion.  (See *The Housing Group v. PMA Capital Ins. Co.* (2011) 193 Cal.App.4th 1150, 1152, fn. 1.)

On October 21, 2005 Swanson's personal attorney, Richard E. Blasco, requested that State Farm defend and indemnify Swanson in an action on a cross-complaint by her neighbors, Mark and Patricia Bitetti (the Bitetti Action), which alleged claims for premises liability and negligence in connection with an incident that occurred on January 10, 2005. Blasco was already representing Swanson in the underlying lawsuit on her claims against the Bitettis for damage to her property and for personal injury caused by failure of the Bitettis' retaining wall after the La Crescenta area experienced substantial rainfall in December 2004.

On November 4, 2005 State Farm wrote to Swanson and stated that it was accepting "the defense of the lawsuit subject to our reservation of rights." State Farm tentatively accepted Swanson's choice of Blasco as her *Cumis* counsel, subject to his compliance with the requirements of Civil Code section 2860.[2] State Farm asserted that there was "a question whether we have a duty, under the terms of the policy, to defend or indemnify" Swanson for the loss alleged in the Bitetti Action. The rights reserved by State Farm involved questions regarding whether some of the claimed damages "would qualify as bodily injury or property damage as defined by the policy," whether they "arose out of an occurrence as defined by the policy," and whether they were excluded from coverage by policy provisions excluding certain bodily injury or property damage. (Bold omitted.) State Farm also advised Swanson that it was "reserving the right to supplement or amend this reservation of rights to add or remove any policy defenses," as well as "the right to withdraw this defense if we determine there is no duty to defend or indemnify you." State Farm also reserved the right "to submit any disagreement over [defense attorney] fees to arbitration as outlined in C[ivil] C[ode section] 2860."

On December 5, 2005 Blasco responded that the terms of State Farm's November 4, 2005 letter were generally acceptable, except for State Farm's proposed

---

[2]     Civil Code section 2860 sets forth qualifications and hourly rate limits for independent counsel paid by an insurer along with related provisions governing some aspects of the relationship between independent counsel chosen by the insured (i.e., *Cumis* counsel) and counsel chosen by the insurer. (See fn. 9, *post*.)

hourly rate of $150. Blasco requested an hourly rate of $200, the same rate Swanson had been paying him. Blasco also provided information about himself and his firm to demonstrate his qualifications to serve as defense counsel under Civil Code section 2860.

On December 20, 2005 State Farm notified Blasco that he had met the requisite statutory qualifications for *Cumis* counsel but advised him that the compensated hourly rate would remain $150. The parties resolved the issue by Blasco agreeing to accept payment from State Farm at the hourly rate of $150 and Swanson agreeing to pay Blasco the $50 hourly rate difference.

On April 11, 2006 State Farm amended its original reservation of rights and withdrew certain policy defenses it had previously asserted in its reservation of rights. It is undisputed that State Farm's withdrawal of these reservations "eliminated the *Cumis*-triggering conflict" between the insurer and its insured.[3] State Farm informed Swanson that it had chosen and retained an attorney from the firm of Procter, McCarthy and Slaughter (Procter) to "take over the defense of" the Bitetti Action. State Farm also advised Swanson that "elimination of the *Cumis*-triggering conflict" relieved it of its obligation "to pay for independent counsel." State Farm explained that "in the absence of any obligation to provide independent counsel of the insured's choosing, State Farm had the right to 'provide a defense at our expense by counsel of our choice.'"

Prior to the April 11, 2006 letter, State Farm had not asked for Swanson's consent to turn control of the Bitetti Action over to Proctor or to have Proctor serve as defense cocounsel with Blasco. Swanson subsequently agreed to add Proctor as cocounsel without removing Blasco as her defense counsel. Proctor and Blasco then worked together as cocounsel in the defense of the Bitetti Action. Blasco continued billing State Farm and Swanson as he had been doing before State Farm withdrew the reservations of

---

**3** In response to State Farm's undisputed material fact number 7, Swanson stated: "Undisputed legal conclusion that: 'The effect of the withdrawal of certain reservations in the April 11, 2006 [letter] eliminated the *Cumis*-triggering conflict.'"

4

rights that had triggered Swanson's right to *Cumis* counsel. State Farm, however, did not make any further payments to Blasco.[4]

The Bitetti Action went to trial in November 2006. Both Blasco and Proctor defended Swanson. The jury found in favor of Swanson and did not award the Bitettis any monetary damages.[5] The trial court in the Bitetti Action entered judgment on January 14, 2008.

## PROCEDURAL BACKGROUND

Swanson filed this action in April 2009.[6] Her first cause of action asked the court to submit the dispute over Blasco's fees to arbitration pursuant to the terms of the Policy and Civil Code section 2860. Her second cause of action for breach of insurance contract sought damages in the amount of $60,384.76 for post-April 11, 2006 attorneys' fees billed by Blasco for the defense of the Bitetti Action. Her third cause of action for breach of the covenant of good faith and fair dealing sought damages for mental suffering and emotional distress, as well as punitive damages.

In July 2009 Swanson filed a motion to compel arbitration of the Blasco fee dispute.[7] On August 28, 2009 the trial court denied the motion.

---

[4]     State Farm did pay Swanson in February 2009 all $10,116.54 in costs she incurred in the Bitetti Action.

[5]     Swanson had settled her claims against the Bitettis for $300,000.

[6]     Swanson instituted this action by filing a petition asserting three causes of action: (1) to compel arbitration pursuant to Civil Code section 2860, (2) breach of insurance contract, and (3) tortious breach of insurance contract. On January 14, 2011 the trial court converted the case from a petition to an unlimited civil action, and changed the Los Angeles Superior Court case number from ES012997 to EC055177.

[7]     From the case summary for *Swanson v. State Farm General Insurance Company*, Los Angeles County Superior Court Case No. ES012997, we take judicial notice on our own motion of July 27, 2009 as the date Swanson filed the motion to compel arbitration. (See Evid. Code, §§ 452, subd. (d), 459.)

5

In October 2010 Swanson filed a motion for summary adjudication on all three causes of action. In January 2011 the trial court denied the motion, noting that the court had previously decided the arbitration issue in August 2009.

In September 2011 State Farm filed a motion for summary judgment or in the alternative for summary adjudication. State Farm argued that when it withdrew all *Cumis*-triggering reservations of rights regarding Swanson's defense on April 11, 2006, Swanson was no longer entitled to independent *Cumis* counsel paid by State Farm. State Farm argued that at that point it was entitled to appoint counsel of its choosing and had no further obligation to pay for Swanson's personal attorney. Swanson filed an opposition to State Farm's motion for summary judgment and a cross-motion for summary adjudication on the issues in Swanson's previously-denied motion for summary adjudication. State Farm argued on reply that the court could not consider Swanson's cross-motion because she had filed it on only 14 days' notice in violation of Code of Civil Procedure section 437c.

On January 17, 2012 the trial court granted State Farm's motion for summary judgment and denied Swanson's cross-motion. The trial court stated: "The parties agree that there is no disputed issue of material fact and that this motion presents purely an issue of law of first impression. That issue is whether, after *Cumis*-triggering reservations are withdrawn by an insurer, an insurer remains obligated to pay the insured's personal counsel if the insured does not wish to be represented by panel counsel on a going-forward basis." The trial court concluded that "when State Farm ultimately withdrew its *Cumis*-triggering reservations, plaintiff insured was no longer entitled to independent *Cumis* counsel. Under the terms of the Policy, where there was no *Cumis*-trigger, State Farm had the right to 'provide a defense at our expense by counsel of our choice.'" The court rejected Swanson's claim that State Farm, Swanson, and Blasco had created a modified insurance agreement when State Farm and Blasco agreed in 2005 to a rate of reimbursement for his fees. The trial court stated: "Agreeing on the hourly rate was the satisfaction of an obligation imposed by statute. Civil Code section 2860 does

6

not expand or broaden an insurer's duty to defend." On February 2, 2012 the trial court entered judgment in favor of State Farm. Swanson filed a timely notice of appeal.

## DISCUSSION

The primary issue on appeal is whether State Farm had the right to take control of the litigation with an attorney of its choosing and to cease paying Blasco, *Cumis* counsel chosen by Swanson, after State Farm withdrew its *Cumis*-triggering reservation of rights. We agree with the trial court that State Farm had such a right. As we explain below, an insurer has a duty to provide *Cumis* counsel to its insured only while the insurer maintains a *Cumis*-triggering reservation of rights. Thus, when State Farm withdrew its *Cumis*-triggering reservation of rights, it no longer had an obligation to allow Swanson to control the litigation or an obligation to pay the attorneys' fees of Swanson's *Cumis* counsel.

A. *Standard of Review*

We review a trial court's order granting a defendant's motion for summary judgment motion de novo. (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860; *GreenLake Capital, LLC v. Bingo Investments, LLC* (2010) 185 Cal.App.4th 731, 735.) Code of Civil Procedure section 437c, subdivision (c), provides that a "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A moving defendant "'bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.'" (*Morgan v. United Retail Inc.* (2010) 186 Cal.App.4th 1136, 1141, quoting *Aguilar*, *supra*, at p. 850; see Code Civ. Proc., § 437c, subds. (*o*), (p)(2).) If the moving defendant meets that burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists . . . ." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, at p. 849.) "We must

7

affirm where it is shown that no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." (*Morgan*, *supra*, at p. 1142.)

#### B.　　*State Farm's Duty To Defend and To Provide Cumis Counsel*

The provisions of the standard general liability insurance policy impose on "the insurer a duty to indemnify the insured, generally stating that the insurer 'will pay all sums that the insured becomes legally obligated to pay as damages' for harm proved within coverage. [¶] [A secondary provision of] the standard policy imposes on the insurer a duty to defend the insured, generally stating that the insurer has a 'duty to defend' the insured 'in any suit seeking damages' for harm alleged within coverage." (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 957.)[8] An "insurer's duty to defend is broader than its duty to indemnify." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 46.) "The insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved. . . . [¶] By contrast, the insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed." (*Ibid.*)

At the time an insurer accepts an insured's tender of defense, the insurer has an incentive to reserve a broad spectrum of coverage defenses in order to preserve its right to limit its obligation to indemnify to covered claims. (*Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489, 497-498.) By giving notice to its insured, "[a]n insurer may agree to defend a suit subject to a reservation of rights. [Citation.] In this manner, an 'insurer meets its obligation to furnish a defense without waiving its right to assert coverage

---

**8**　　The Policy provided: "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will: [¶] 1. pay up to our limit of liability for the damages for which the insured is legally liable; and [¶] 2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decided is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability." (Bold omitted.)

defenses against the insured at a later time.' [Citation.]" (*Id.* at p. 498.) "'[I]f the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by [any] judgment [against its insured]. If the injured party prevails, that party or the insured will assert his claim against the insurer. . . . At this time the insurer can raise the noncoverage defense previously reserved.'" (*J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1017, fn. omitted, quoting *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 279; see *State Farm General Ins. Co. v. Mintarsih* (2009) 175 Cal.App.4th 274, 283 ["an insurer may provide the required defense under a reservation of its rights to later assert its objections to coverage as to one or more of the claims alleged against its insured"].)

When an insurer undertakes defense of its insured, an attorney selected by the insurer provides dual representation to the insured and the insurer. An insurer that owes "a duty to defend an insured, arising because there exists a potential for liability under the policy, 'has the right to control defense and settlement of the third party action against its insured, and is . . . a direct participant in the litigation.' [Citations.] The insurer typically hires defense counsel who represents the interests of both the insurer and the insured. [Citations.] In this 'usual tripartite relationship existing between insurer, insured and counsel, there is a single, common interest shared among them. Dual representation by counsel is beneficial since the shared goal of minimizing or eliminating liability to a third party is the same.' [Citation.]" (*Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1468.)

The benefits of dual representation give way to the need for independent *Cumis* counsel for the insured, however, if an insurer reserves its rights to deny indemnification on specific coverage issues, and the reservation creates a conflict of interest between the insurer and its insured that precludes dual representation because of the attorney's ethical obligations to refrain from representing conflicting interests. (Civ. Code, § 2860, subd. (b); *Long v. Century Indemnity Co.*, *supra*, 163 Cal.App.4th at pp. 1470-1471.) As the court explained in *Cumis*, "the Canons of Ethics impose upon lawyers hired by the insurer an obligation to explain to the insured and the insurer the full implications of joint

9

representation in situations where the insurer has reserved its rights to deny coverage. If the insured does not give an informed consent to continued representation, counsel must cease to represent both. Moreover, in the absence of such consent, where there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured. The insurer may not compel the insured to surrender control of the litigation [citations]. Disregarding the common interests of both insured and insurer in finding total nonliability in the third party action, the remaining interests of the two diverge to such an extent as to create an actual, ethical conflict of interest warranting payment for the insured['s] independent counsel." (*Cumis*, *supra*, 162 Cal.App.3d at p. 375; accord, *James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, 1099, fn. 1.)

In 1987 the Legislature codified the *Cumis* rule in Civil Code section 2860 (Stats. 1987, ch. 1498, § 4, p. 5779). (*Compulink Management Center, Inc. v. St. Paul Fire & Marine Ins. Co.* (2008) 169 Cal.App.4th 289, 294.) Pursuant to Civil Code section 2860 if the insurance contract requires the insurer to provide a defense and a disqualifying conflict of interest arises that creates a duty to provide the insured with *Cumis* counsel, the insurer must provide *Cumis* counsel unless the insured waives the right to *Cumis* counsel in writing. (*Id.*, subds. (a), (e).) A disqualifying conflict of interest may arise when the insurer reserves its rights with respect to a specific coverage issue "and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim" or claims involving the questioned coverage. (*Id.*, subd. (b).)[9] "'It is only when the basis for the reservation of rights is such as to cause

---

[9] Civil Code section 2860 provides in pertinent part: "(a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. An insurance

10

assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case that a conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise.'" (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1421-1422.) To be disqualifying, the conflict of interest must be "'significant, not merely theoretical, actual, not merely potential.'" (*Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2000) 79 Cal.App.4th 114, 130; *Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1007.)

Consistent with these principles, State Farm reserved coverage rights that the parties agree created a disqualifying conflict of interest triggering State Farm's duty to pay for *Cumis* counsel for Swanson. Swanson does not dispute that an insurer like State Farm that reserves *Cumis*-triggering defenses can later waive some or all of those defenses and that State Farm expressly reserved its right to make such a waiver in its November 4, 2005 reservation of rights letter. Then, on April 11, 2006, after having further considered coverage issues, State Farm gave Swanson notice that it was withdrawing its broadest coverage reservations.

Swanson and State Farm agree that once State Farm waived its *Cumis*-triggering defenses on April 11, 2006, the disqualifying conflict of interest no longer existed.

---

contract may contain a provision which sets forth the method of selecting that counsel consistent with this section.

"(b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits."

Civil Code section 2860 also provides that, if the insured selects *Cumis* counsel, the insurer may continue to participate in the litigation and be represented by its chosen attorney. (*Id.*, subd. (f).) *Cumis* counsel and the insured must cooperate with the insurer's counsel in the exchange of non-privileged information and other matters relevant to the litigation and consult with the insurer "on all matters relating to the action." (*Id.*, subds. (d), (f).)

Swanson and State Farm also agree that under Swanson's Policy, "in the absence of any obligation to provide independent counsel of the insured's choosing, State Farm had the right to 'provide a defense at our expense by counsel of our choice.'" Swanson and State Farm further agree that, pursuant to the Policy provisions regarding the duty to defend, State Farm at any time could appoint counsel of its choice to represent Swanson and State Farm.

As explained above, the duty to provide and pay for *Cumis* counsel arises only where a disqualifying conflict of interest exists. (Civ. Code, § 2860; *Long v. Century Indemnity Co.*, *supra*, 163 Cal.App.4th at pp. 1468-1471; *Cumis*, *supra*, 162 Cal.App.3d at p. 375; see *Musser v. Provencher* (2002) 28 Cal.4th 274, 282-283.) Otherwise, "'[t]he insurer owes no duty to provide independent counsel . . . because the *Cumis* rule is not based on insurance law but on the ethical duty of an attorney to avoid representing conflicting interests.'" (*James 3 Corp. v. Truck Ins. Exchange*, *supra*, at p. 1101, quoting *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1394.) Thus, when the ethical bar to dual representation does not exist, the insurer has no duty to provide and pay for *Cumis* counsel. We are not aware of any authority, and Swanson cites none, holding that once an insurer provides and pays for *Cumis* counsel, the insurer cannot take over control of the litigation and cease paying *Cumis* counsel if the disqualifying conflict ceases to exist later in the litigation. Here, it is undisputed that the disqualifying conflict of interest between State Farm and Swanson ceased to exist on April 11, 2006. After that date, State Farm did not have a duty to continue to provide and pay for *Cumis* counsel.[10]

---

**10** Of course, an insurer's decisions to withdraw the reservation of rights that gives rise to the need for *Cumis* counsel, to take control of the litigation, and to cease paying *Cumis* counsel, as well as the timing of those decisions, are, like all of the insurer's decisions, subject to the insurer's duty of good faith and fair dealing to its insured.

C.    *There Was No Relinquishment of a Right To Cease Paying Cumis Counsel*

Swanson contends that even if State Farm had a unilateral right under the Policy to stop paying for *Cumis* counsel, State Farm relinquished that right by modifying the Policy in the exchange of letters among State Farm, Swanson, and Blasco in November and December 2005.  Swanson argues State Farm also waived its right to take control of the defense and stop paying *Cumis* counsel by failing to reserve such a right.  We reject both of these arguments.[11]

1.    There Was No Modification of the Insurance Contract

Swanson argues that the exchange of correspondence with State Farm in November and December 2005 constituted a modification of the Policy.  We find no such modification.  The November and December 2005 letters were the means by which State Farm preserved its rights and fulfilled its duties under the Policy and applicable law.  The November 4, 2005 letter to Swanson satisfied State Farm's contractual duty to provide a defense based on State Farm's initial position that at least some of the claims in the Bitettis' cross-complaint were potentially covered.  (See *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081.)  The letter also protected State Farm's interest in not waiving, but rather preserving, its coverage defenses.  (See *Blue Ridge Ins. Co. v. Jacobsen*, *supra*, 25 Cal.4th at pp. 497-498; *Long v. Century Indemnity Co.*, *supra*, 163 Cal.App.4th at p. 1470, fn. 9.)  Similarly, State Farm's November 4, 2005 letter to Blasco and the December 2005 letters exchanged between Blasco and State Farm implemented the provisions of Civil Code section 2860 that authorized State Farm to require Blasco to meet certain professional qualifications for *Cumis* counsel and to limit the amount State

---

[11]    Swanson also raises several evidentiary issues.  Because we are able to resolve this appeal without reaching the merits of these issues, we decline to address them.  (See *Kaiser Foundation Health Plan, Inc. v. Superior Court* (2012) 203 Cal.App.4th 696, 715-716 [appellate court may "decline to review an issue that will have no effect on the parties"]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 259 ["we do not see these matters as necessary to our appellate decision and we accordingly decline to resolve them"].)

Farm had to pay Blasco to the rates State Farm usually paid counsel it retained.**12** Swanson concedes that there is no signed modification of the Policy and that she did not give additional consideration for any such modification. (See *Buss v. Superior Court*, *supra*, 16 Cal.4th at p. 50 ["a separate contract supported by separate consideration" would "supersede the [original] policy"].)

Swanson's reliance on *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, which she claims supports her modification argument and involved "an almost identical set of facts as occurred in this case," is misplaced. Behnke tendered defense of an action against him to State Farm. State Farm agreed to defend, reserved disqualifying coverage defenses, approved Behnke's selection of *Cumis* counsel subject to Civil Code section 2860, and agreed to pay counsel at an hourly rate lower than counsel's indicated rate. (*Behnke*, *supra*, at pp. 1448-1449.) State Farm then sent a second reservation of rights letter withdrawing the *Cumis*-triggering reservation of coverage defenses and instructing Behnke that another attorney, one selected by State Farm, would be taking over the defense of the litigation. (*Id.* at p. 1449.) Behnke objected to the change in attorneys and wanted to continue with the firm that had been representing him as *Cumis* counsel. (*Ibid.*) So far, the facts in *Behnke* are similar to those in this case.

In *Behnke*, however, State Farm then terminated the services of the attorney it had selected and agreed to allow *Cumis* counsel to continue defending Behnke. (*Behnke v. State Farm General Ins. Co.*, *supra*, 196 Cal.App.4th at p. 1450.) A dispute arose

---

**12** Civil Code section 2860, subdivision (c), provides in part: "When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications which may include that the selected counsel have (1) at least five years of civil litigation practice which includes substantial defense experience in the subject at issue in the litigation, and (2) errors and omissions coverage. The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended."

14

between State Farm and *Cumis* counsel over the necessity and reasonableness of the firm's fees. The *Behnke* court stated that, given the fee limitation and arbitration requirement in Civil Code section 2860, subdivision (c), and State Farm's express reservation of the right to arbitrate fee disputes, "State Farm's consent to Behnke's decision to retain [the firm] as his independent defense counsel in the . . . action . . . must be deemed an agreement or promise by State Farm to pay any *Cumis* counsel fees billed by [the firm] . . . that were both *reasonably necessary* and *reasonable in amount* as determined by an arbitrator in the event a fee dispute arose . . . ." (*Behnke*, *supra*, at p. 1460.) The *Behnke* court concluded that "the factual allegations show that State Farm agreed to pay only for those *Cumis* counsel fees that were both reasonably necessary and reasonable in amount as determined by an arbitrator in the event of a dispute." (*Id.* at p. 1461.) *Behnke* says nothing about an insurer's duty to continue paying *Cumis* counsel after waiving *Cumis*-triggering reservations of rights or about modification of an insurance policy. Here, State Farm made the opposite choice of that made by the insurer in *Behnke*. State Farm did not retain Blasco and refused to continue paying him after waiving the disqualifying coverage defenses.

> 2. There Was No Waiver of the Right To Retake Control of the Defense

Swanson also argues that State Farm waived its right to retake control of the defense by counsel of its choosing because State Farm did not expressly reserve this right in its November 4, 2005 letter. As noted above, however, an insurer's obligations under *Cumis* and Civil Code section 2860 are "'not based on insurance law but on the ethical duty of an attorney to avoid representing conflicting interests.'" (*James 3 Corp. v. Truck Ins. Exchange*, *supra*, 91 Cal.App.4th at p. 1101, quoting *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, *supra*, 20 Cal.App.4th at p. 1394.) Swanson has not cited any authority, and we are not aware of any, holding that an insurer may waive its rights under *Cumis* and Civil Code section 2860 by failing to reserve them.

15

None of the cases Swanson cites supports her contention that State Farm waived its right to retake control of the defense by failing to reserve its right to do so in its November 4, 2005 reservation of rights letter. For example, Swanson argues that the Supreme Court in *Buss v. Superior Court*, *supra*, 16 Cal.4th 35 held that if the insurer wants to reserve the right to terminate *Cumis* counsel and take over control of the litigation, the insurer must expressly say so in the same manner that the insurer reserves the right to pursue coverage defenses in a reservation of rights letter. *Buss* does not say this. The issue in *Buss* was whether an insurer could reserve the right to reimbursement for costs of defense where some of the claims were potentially covered and some of the claims were not. (*Id.* at pp. 49-50.) The Supreme Court held that an insurer cannot reserve the right to reimbursement for the defense costs of potentially covered claims because the insurer had no such right to reserve, but the insurer can seek reimbursement for the defense costs of claims that were not even potentially covered. (*Id.* at pp. 49-53.) There is no issue in this case about State Farm's right to reimbursement for defense costs, nor any contention that the Bitetti Action involved only claims that were not potentially covered by the Policy.

Swanson's reliance on *Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718 is also misplaced. The court in *Hamilton* held that when an insured tenders a suit, the insurer has but one "chance to be heard" with regard to issues material to liability and "cannot reach back for due process to void" a settlement that the insured has entered into "to eliminate personal liability." (*Id.* at p. 728.) According to Swanson, *Hamilton* stands for the proposition that State Farm in April 2006 could not "reach back" and revisit its decision in November 2005 authorizing retention of and payment to *Cumis* counsel selected by the insured. The *Hamilton* court's use of the phrase one "chance to be heard," however, referred to the opportunity an insurer has to reserve its rights with respect to indemnification issues at the time the insurer first responds to an insured's tender and request for a defense. (*Ibid.*) The court was explaining that when an insurer denies that it has a duty to indemnify and defend a claim against the insured, the insured may enter into a reasonable, noncollusive settlement without the insurer's consent and

16

then seek reimbursement from the insurer.[13] (*Id.* at pp. 728-729.) The insurer in *Hamilton* provided the insured with a defense, and there was no issue regarding a breach of the duty to defend or anything relating to *Cumis* counsel.

        D.      *Summary Judgment Was Appropriate*

Because State Farm had no duty to continue to allow Swanson's *Cumis* counsel to control the Bitetti litigation or to continue to pay *Cumis* counsel after State Farm waived the *Cumis*-triggering reservations of rights, there was no triable issue of material fact regarding whether State Farm breached its duty to defend Swanson by refusing to pay post-April 11, 2006 *Cumis* fees or by taking control of the litigation with counsel of its choice. Moreover, because State Farm did not breach the insurance contract, it cannot be liable for breach of the implied covenant of good faith and fair dealing. (See *Brown v. Mid-Century Ins. Co.* (2013) 215 Cal.App.4th 841, 858; *Minich v. Allstate Ins. Co.* (2011) 193 Cal.App.4th 477, 493.) Therefore State Farm was entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Biancalana v. T.D. Service Co.*, *supra*, 56 Cal.4th at p. 813.) The trial court properly granted State Farm's motion for summary judgment.

---

[13] The issue in *Hamilton* was whether the amount of a stipulated settlement against the insured was the proper measure of the insured's damages caused by the insurer's breach of its duty to accept a reasonable settlement demand. (*Hamilton v. Maryland Casualty Co.*, *supra*, 27 Cal.4th at pp. 721-722.)

## DISPOSITION

The judgment is affirmed.  State Farm is to recover its costs on appeal.


SEGAL, J.*


We concur:


PERLUSS, P. J.


WOODS, J.

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.