Opinion
CUÉLLAR, J.
This court has long maintained that if any claims in a third party complaint against a person or entity protected by a commercial general liability (CGL) insurance policy are even potentially covered by the policy, the insurer must provide its insured with a defense to all the claims. (E.g., Horace Mann Ins. Co. v. Barbara B. (1993) 4 Cal.4th 1076, 1081 [17 *992 Cal.Rptr.2d 210, 846 P.2d 792].) The insurer’s provision of an immediate, complete defense in such a “mixed” action, we have explained, is “prophylactically” necessary, even if outside of the policy’s strict terms, to protect the insured’s litigation rights with respect to the potentially covered claims. (Buss v. Superior Court (1997) 16 Cal.4th 35, 49 [65 Cal.Rptr.2d 366, 939 P.2d 766] (Buss).) Nevertheless, we concluded in Buss that the insured would be unjustly enriched at the insurer’s expense if not ultimately required to bear the cost of litigating those claims for which the insured had never purchased defense or indemnity protection. Accordingly, we held in Buss that the insurer may seek reimbursement from the insured of defense fees and expenses solely attributable to the claims that were clearly outside policy coverage. (Ibid.)
We had no occasion in Buss to consider the related question presented here: From whom may a CGL insurer seek reimbursement when (1) the insurer initially refused to defend its insured against a third party lawsuit; (2) compelled by a court order, the insurer subsequently provided independent counsel under a reservation of rights — so-called Cumis counsel (see San Diego Federal Credit Union v. Cumis Ins. Society, Inc. (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494] (Cumis);[1] see also Civ. Code, § 2860[2]) — to defend its insured in the third party suit; (3) the court order required the insurer to pay all “reasonable and necessary defense costs,” but expressly preserved the insurer’s right to later challenge and recover payments for “unreasonable and unnecessary” charges by counsel; and (4) the insurer now alleges that independent counsel “padded” their bills by charging fees that were, in part, excessive, unreasonable, and unnecessary?
The insurer urges that it may recoup the overbilled amounts directly from Cumis counsel themselves. Cumis counsel respond that, if the insurer has any right at all under the facts of this case to recover overbilled amounts, the insurer’s right runs solely against its insureds. Cumis counsel’s erstwhile clients might then have a right of indemnity from these counsel.
We conclude that under the circumstances of this case, the insurer may seek reimbursement directly from Cumis counsel. If Cumis counsel, operating under a court order that expressly provided that the insurer would be able to *993 recover payments of excessive fees, sought and received from the insurer payment for time and costs that were fraudulent, or were otherwise manifestly and objectively useless and wasteful when incurred, Cumis counsel have been unjustly enriched at the insurer’s expense. Cumis counsel provide no convincing reason why they should be absolutely immune from liability for enriching themselves in this fashion. Alternatively, Cumis counsel fail to persuade that any financial responsibility for their excessive billing should fall first on their own clients — insureds who paid to receive a defense of potentially covered claims, not to face additional rounds of litigation and possible monetary exposure for the acts of their lawyers. For these reasons, we reverse the judgment of the Court of Appeal insofar as it concluded that in this case reimbursement cannot be obtained directly from Cumis counsel.
I. Background
In the summer of 2005, appellant Hartford Casualty Insurance Company (Hartford) issued one CGL insurance policy to Noble Locks Enterprises, Inc. (Noble Locks), effective from My 28, 2005, to My 28, 2006, and a second CGL policy to J.R. Marketing, L.L.C. (J.R. Marketing), effective August 18, 2005, to August 18, 2006. In these policies, Hartford promised to defend and indemnify the named insureds, and their members and employees, against certain claims for business-related defamation and disparagement.
In September- 2005, an action was filed in Marin County Superior Court against J.R. Marketing, Noble Locks, and several of their employees (the Marin County action). The complaint stated claims for intentional misrepresentation, breach of fiduciary duty, unfair competition, restraint of trade, defamation, interference with business relationships, mismanagement, and conspiracy. Around the same time, related actions were filed against many of the same parties in Nevada (the Nevada action) and Virginia (the Virginia action). In the Marin County action, certain defendants, apparently represented by the law firm of Squire Sanders (US) LLP (Squire Sanders),[3] filed cross-complaints.
On September 26, 2005, defense of the Marin County action was tendered to Hartford under the J.R. Marketing and Noble Locks policies. In early January 2006, Hartford disclaimed a duty to defend or indemnify defendants in the Marin County action on the grounds that the acts complained of appeared to have occurred before the policies’ inception dates, and that certain of the defendants appeared not to be covered insureds. The Marin County defendants, represented by Squire Sanders, thereupon filed the instant *994 coverage action against Hartford (the coverage action). Hartford subsequently agreed to defend J.R. Marketing, Noble Locks, and several of the individual defendants in the Marin County action as of January 19, 2006, subject to a reservation of rights. However, Hartford declined to pay defense costs incurred before that date, and also declined to provide independent counsel in place of its panel counsel.
In July 2006, the trial court in the coverage action entered a summary adjudication order, finding that Hartford had a duty to defend the Marin County action effective on the date the defense was originally tendered. The order also provided that, because of Hartford’s reservation of rights, Hartford must fund Cumis counsel to represent its insureds in the Marin County action. The insureds retained Squire Sanders as Cumis counsel.
On September 26, 2006, the trial court in the coverage action issued an enforcement order directing Hartford to promptly pay all defense invoices submitted to it as of August 1, 2006, and to pay all future defense costs in the Marin County action within 30 days of receipt. The order, which was drafted by Squire Sanders and adopted by the court, further stated that Hartford had breached its defense obligations by refusing to provide Cumis counsel until ordered to do so and by thereafter failing to pay counsel’s submitted bills in a timely fashion. The order also declared that although Squire Sanders’s bills “still [had to] be reasonable and necessary,” as a result of its breach, Hartford would be precluded from “invoking] the rate provisions of Section 2860.”[4] Finally, the order provided that, “[t]o the extent Hartford seeks to challenge fees and costs as unreasonable or unnecessary, it may do so by way of reimbursement after resolution of the [Marin County action].” The Court of Appeal subsequently affirmed both the summary adjudication and enforcement orders.
In October 2009, the Marin County action was resolved. The coverage action, stayed during the pendency of the Marin County action, resumed. Hartford thereafter filed a cross-complaint, and then a first amended cross-complaint, against (1) various persons for whom it had allegedly paid defense fees and expenses in the Marin County, Nevada, and Virginia actions, and (2) Squire Sanders. The cross-complaint asserted that Hartford was entitled to recoup from the cross-defendants a significant portion of some $15 million in *995 defense fees and expenses, including some $13.5 million Hartford paid to Squire Sanders pursuant to the enforcement order.
The first amended cross-complaint stated causes of action for reimbursement pursuant to the enforcement order, unjust enrichment, accounting/money had and received, and rescission. It asserted that Hartford was entitled to reimbursement for payment of defense legal services rendered beyond the scope of the enforcement order (1) to individuals and entities who were not insureds under the J.R. Marketing and Noble Locks policies; (2) prior to any proper tender by any individual or entity; (3) for any individual or entity in the Nevada and Virginia actions; and (4) for any individual or entity to the extent the services, and the costs thereof, were “abusive, excessive, unreasonable or unnecessary.”
Represented by Squire Sanders, the cross-defendants — including Squire Sanders itself — demurred to the first amended cross-complaint. The demurrer stated multiple grounds applicable to all the cross-defendants. Also included, however, was a separate contention that Hartford could assert no legal or equitable claim against “non-insureds, including an insured’s independent counsel.” In this regard, the demurrer asserted that an insurer’s right to reimbursement depends on the contractual relationship between insured and insurer, and that “recognizing a reimbursement cause of action against a law firm would result in undesirable consequences.”
On September 27, 2011, the trial court sustained, without leave to amend, the demurrer to the reimbursement and rescission causes of action as to the “non-insured” cross-defendants (identified as Scott Harrington, one of the Marin County defendants, and Squire Sanders).[5] In sustaining the demurrer as to Squire Sanders, the court concluded that Hartford’s right to reimbursement, if any, was from its insureds, not directly from Cumis counsel. The court indicated that it reached this conclusion based on Buss and Jackson v. Rogers & Wells (1989) 210 Cal.App.3d 336 [258 Cal.Rptr. 454], a decision explaining the public policy against the assignment of legal malpractice actions. The court subsequently entered a judgment dismissing Harrington and Squire Sanders from Hartford’s cross-action.
Hartford appealed, contending that it was entitled to recover directly from Cumis counsel for “unreasonable” and “excessive” fees and costs. In essence, Hartford asserted that counsel, not the insureds, had been unjustly enriched by overcharging Hartford for the insureds’ defense. The Court of Appeal affirmed the dismissal of both Harrington and Squire Sanders from Hartford’s cross-action.
*996 The bulk of the Court of Appeal’s analysis focused on Hartford’s direct claim against Squire Sanders. The court stressed that restitution is not required merely because one person has benefited another. Instead, the court reasoned, restitution is available only where it would be unjust to allow the person receiving the benefit to retain it, and where restitution would not frustrate public policy. The court noted that Hartford initially breached its duty to defend the Marin County action, thus forcing its insureds to retain their own counsel and negotiate a fee arrangement. Thereafter, Hartford, having reserved its right to contest coverage, was ordered to provide and compensate Cumis counsel.
Under these circumstances, the Court of Appeal concluded, allowing Hartford to sue Squire Sanders directly for reimbursement of defense fees and costs would frustrate the policies underlying section 2860 and the Cumis scheme generally. The case law already establishes, the Court of Appeal reasoned, that when Cumis counsel is provided following an insurer’s breach of its duty to defend, “the insurer loses all right to control the defense.” It cannot thereafter “impose[] on [them] its own choice of defense counsel, fee arrangement or strategy.” Instead, counsel chosen by the insureds answer solely to their clients in regard to the clients’ litigation interests, free from any insurer involvement in counsel’s approach to the insureds’ defense. Applying these principles, the court stated that it would “now take[] the law one slight step further by holding Hartford likewise barred from later maintaining a direct suit against independent counsel for reimbursement of fees and costs charged by such counsel for crafting and mounting the insureds’ defense where Hartford considers those fees unreasonable or unnecessary.”
The Court of Appeal reasoned as well that it would be anomalous if Hartford, having “waived” the right to arbitrate fee disputes under section 2860 by breaching its duty to defend, could now place itself in a better position by bringing its claims to court. Finally, the Court of Appeal observed that Squire Sanders had conferred a “benefit” not on Hartford, but on its clients. Accordingly, the court ruled, it is the insured cross-defendants, rather than Squire Sanders, to whom Hartford must look “if it believes the fees were incurred to defend claims that were not covered by the insurer’s policies or that the insuredfs] agreed to pay Squire [Sanders] more than was reasonable for the services that Squire [Sanders] performed.”
We granted Hartford’s petition for review, which raised a narrow question: May an insurer seek reimbursement directly from counsel when, in satisfaction of its duty to fund its insureds’ defense in a third party action against them, the insurer paid bills submitted by the insureds’ independent counsel for the fees and costs of mounting this defense, and has done so in *997 compliance with a court order expressly preserving the insurer’s post-litigation right to recover “unreasonable and unnecessary” amounts billed by counsel?[6] We conclude that, given the facts of this case and within the limits discussed below, such a right of reimbursement should run directly against Cumis counsel. We therefore reverse the Court of Appeal’s judgment insofar as it addressed Hartford’s rights against Squire Sanders, and otherwise affirm.[7]
II. Discussion[8]
A. Restitution and the Duty to Defend
When an insured under a standard CGL policy is sued by a third party, the insurer’s contractual duty to defend the insured extends to all claims that are even potentially subject to the policy’s indemnity coverage. (E.g., Montrose Chemical Corp. v. Superior Court (1993) 6 Cal.4th 287, 295-296 [24 Cal.Rptr.2d 467, 861 P.2d 1153]; Gray v. Zurich Ins. Co. (1966) 65 Cal.2d 263, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168].) Moreover, when *998 the third party suit includes some claims that are potentially covered, and some that are clearly outside the policy’s coverage, the law nonetheless implies the insurer’s duty to defend the entire action. (Buss, supra, 16 Cal.4th at p. 48.) And unless the insured agrees otherwise, in a case where — because of the insurer’s reservation of rights based on possible noncoverage under the policy — the interests of the insurer and the insured diverge, the insurer must pay reasonable costs for retaining independent counsel by the insured. (Cumis, supra, 162 Cal.App.3d at p. 375; see § 2860, subds. (a), (b).)
This was such a case. Hartford reserved its right to dispute coverage for some or all of the defendants or claims in the Marin County, Nevada, and Virginia actions. Accordingly, Squire Sanders acted as the insureds’ independent counsel in those suits. It did so pursuant to a court order specifying that Hartford must promptly pay Squire Sanders’s bills as and when submitted, but that the firm’s charges must be “reasonable and necessary,” and that, after conclusion of the underlying litigation, Hartford could seek reimbursement of amounts it deemed excessive by this standard. The order did not specify from whom Hartford might obtain any such reimbursement.
Hartford now seeks reimbursement from Squire Sanders based on equitable principles of restitution and unjust enrichment. By charging Hartford for fees and expenses that were unreasonable and unnecessary for the insureds’ defense, Hartford asserts, Squire Sanders unjustly enriched itself at Hartford’s expense and thus owes Hartford restitution for the overbilled amounts.
An individual who has been unjustly enriched at the expense of another may be required to make restitution. (See Ghirardo v. Antonioli (1996) 14 Cal.4th 39, 51 [57 Cal.Rptr.2d 687, 924 P.2d 996]; see also Rest.3d Restitution and Unjust Enrichment, § 1; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 1013, p. 1102.) Where the doctrine applies, the law implies a restitutionary obligation, even if no contract between the parties itself expresses or implies such a duty. (See Buss, supra, 16 Cal.4th at p. 51.) Though this restitutionary obligation is often described as quasi-contractual, a privity of relationship between the parties is not necessarily required. (Ibid.; see CTC Real Estate Services v. Lepe (2006) 140 Cal.App.4th 856, 860-861 [44 Cal.Rptr.3d 823].)
Restitution is not mandated merely because one person has realized a gain at another’s expense. Rather, the obligation arises when the enrichment obtained lacks any adequate legal basis and thus “cannot conscientiously be retained.” (Rest.3d Restitution and Unjust Enrichment, § 1, com. b, p. 6.)
We addressed whether such an obligation arises for the insured to pay restitution in Buss. When the issuer of a CGL policy has met its obligation to *999 completely defend a “mixed” action against its insured, we held that the insurer is entitled to restitution from the insured for those fees and costs that were solely attributable to defending claims that clearly were not covered by the policy. We explained that the insurer never bargained to bear the costs of defending those claims that were manifestly outside the policy’s coverage, and that the insured never paid premiums, or reasonably expected, to receive a defense of clearly noncovered claims. Under these circumstances, we concluded, it would be unjust for the insured to retain the benefit of the insurer paying for defense costs that are beyond the scope of the insurance contract. (Buss, supra, 16 Cal.4th at p. 51.)
As we concluded in Buss, if an insurer were required to absorb the costs of defending claims it clearly never agreed to defend, it is the insured who would gain a direct and unjust enrichment at the insurer’s expense. But in Buss, we did not confront the question presented here — i.e., who is “unjustly” enriched if independent counsel representing the insured, but compensated by the insurer, are allowed to retain payments that were unreasonable and unnecessary for the insureds’ defense against any claim. In the present situation, Hartford alleges that it is counsel who are the unjust beneficiaries of the insurer’s overpayments. Thus, the question in this instance is premised on the assumption that counsel’s fees were excessive and unnecessary and were not incurred for the benefit of the insured. In such a case, it is counsel who should owe restitution of the excess payments received. As applied here, accepting for the sake of argument that Squire Sanders’s bills were objectively unreasonable and unnecessary to the insured’s defense in the underlying litigation and that they were not incurred for the benefit of the insured, principles of restitution and unjust enrichment dictate that Squire Sanders should be directly responsible for reimbursing Hartford for counsel’s excessive legal bills.
We emphasize that our conclusion hinges on the particular facts and procedural history of this litigation. As noted, the trial court’s September 2006 enforcement order foreclosed Hartford from “invok[ing] the rate provisions of [sjection 2860,” but nevertheless admonished that counsel’s bills must be “reasonable and necessary,” and, citing cases that allow reimbursement actions based on restitution principles, expressly provided that Hartford could challenge Squire Sanders’s bills in a subsequent reimbursement action. This enforcement order was upheld on appeal and is now final. We thus assume its propriety for purposes of the question presented here. Our task is to determine only whether, taking as given that Hartford is entitled to challenge the reasonableness and necessity of counsel’s fees in a reimbursement action, Hartford may seek reimbursement directly from Squire Sanders. We conclude that it may, but express no view as to what rights an insurer that *1000 breaches its defense obligations might have to seek reimbursement directly from Cumis counsel in situations other than the rather unusual one before us in this case.
B. Objections
Squire Sanders and its amici curiae raise numerous objections to the proposition that a direct action by the insurer for unjust enrichment can lie against Cumis counsel. None of these arguments compels the conclusion that such a claim is absolutely foreclosed.
1. Objections based on principles of contract law
First, Squire Sanders invokes the principle that one need not make quasi-contractual restitution for a benefit “incidentally” conferred by another while the other was performing a preexisting duty or protecting his own interests. (E.g., California Medical Assn. v. Aetna U.S. Healthcare of California, Inc. (2001) 94 Cal.App.4th 151, 174 [114 Cal.Rptr.2d 109] [health care service plan provider was not “unjustly” enriched when physicians, who had service contracts with “middlemen” and not with plan provider itself, furnished medical services at discounted rates to plan provider’s enrollees, thus incidentally relieving provider of duty to pay for such services from noncontract physicians at undiscounted rates]; Major-Blakeney Corp. v. Jenkins (1953) 121 Cal.App.2d 325, 340-341 [263 P.2d 655] [absent agreement for compensation, defendant landowner was not liable in restitution to developer of adjacent property insofar as developer’s improvements to neighborhood streets and utilities resulted in “incidental” enhancement of value of defendant’s property]; see 1 Witkin, Summary of Cal. Law, supra, Contracts, § 1020, p. 1109.) Here, Squire Sanders posits, Hartford contracted with its insureds to pay the cost of defending potentially covered third party claims against them, and Squire Sanders is merely the “incidental” beneficiary of Hartford’s performance of this obligation.
We are not persuaded that the incidental benefits principle applies to the facts Hartford has alleged. The logic underlying this principle is straightforward: equity does not create a duty to pay for a benefit one neither sought nor had the opportunity to decline, and over which one had no control. (See Rest.3d Restitution and Unjust Enrichment, § 30, com. b, pp. 465-466.) When a person acts simply as she would have done in any event, out of duty or self-interest, she cannot equitably claim compensation from anyone who merely happens to benefit as a result. (Ibid.)
Neither duty nor self-interest of the kind implicated in the incidental benefits principle accurately explains Hartford’s payments to Squire Sanders. *1001 Hartford’s obligation to pay for independent Cumis counsel was not unlimited. Pursuant to the 2006 enforcement order — as well as under the ethical rules that govern attorney conduct generally (see Rules Prof. Conduct, rule 4-200(A)) — its obligation to finance its insureds’ defense in the Marin County, Nevada, and Virginia actions did not ultimately extend beyond the duty to pay the reasonable costs of the defense. Nor did Hartford voluntarily pay the alleged “unreasonable and unnecessary” overcharges submitted by Squire Sanders out of some self-interest extraneous to the benefit conferred on those counsel. Moreover, any such overpayments were not merely an “incidental” benefit to Squire Sanders, fortuitously received by the firm and beyond its power to refuse. On the contrary, Squire Sanders, under the terms of a court order it obtained (and indeed, drafted), submitted bills to Hartford and obtained payment subject to the express provision that counsel’s bills must be reasonable, and that Hartford could later obtain reimbursement of excessive charges. Under these circumstances, there is no basis for the conclusion that Squire Sanders merely received an incidental benefit it has no equitable obligation to repay.
Squire Sanders next suggests that relief for unjust enrichment is unavailable here because Hartford’s claim is already addressed by an on-point, express contract between Hartford and its insureds. (See, e.g., Hedging Concepts, Inc. v. First Alliance Mortgage Co. (1996) 41 Cal.App.4th 1410, 1419 [49 Cal.Rptr.2d 191]; Lance Camper Manufacturing Corp. v. Republic Indemnity Co. (1996) 44 Cal.App.4th 194, 203 [51 Cal.Rptr.2d 622].) We disagree. Hartford did not accept a bargain binding it to absorb whatever defense fees and expenses the insureds’ independent counsel might choose to bill, no matter how excessive. As such, Hartford’s claim against Squire Sanders for reimbursement of alleged overcharges does not contravene or alter any term of the contracts between Hartford and its insureds.
2. Objections based on public policy and procedure
Like the Court of Appeal, Squire Sanders and its amici curiae invoke the premise that restitution on a theory of unjust enrichment is not available when it would frustrate public policy. (E.g., Peterson v. Cellco Partnership (2008) 164 Cal.App.4th 1583, 1595 [80 Cal.Rptr.3d 316]; California Emergency Physicians Medical Group v. PacifiCare of California (2003) 111 Cal.App.4th 1127, 1136 [4 Cal.Rptr.3d 583].) They urge, on various grounds, that to allow a “breaching insurer” such as Hartford to assert a direct right of action against its insureds’ independent counsel would contravene the purposes of the Cumis rule and section 2860. They further assert that such a direct claim would interfere unduly with the insureds’ attorney-client privilege and with their absolute right to dictate and control the defense presented by independent counsel. We are unpersuaded that public policy precludes a direct action against Squire Sanders in this case.
*1002 Squire Sanders points to the general principle that when an insured is entitled to Cumis counsel, that counsel must be “ ‘ “completely] independen^].” ’ ” (Musser v. Provencher (2002) 28 Cal.4th 274, 283 [121 Cal.Rptr.2d 373, 48 P.3d 408] (Musser).) Squire Sanders asserts that Cumis counsel are answerable to “ ‘ “solely the insured” ’ ” (ibid.) and have no attorney-client relationship with the insurer (Assurance Co. of America v. Haven (1995) 32 Cal.App.4th 78, 87-88, 90 [38 Cal.Rptr.2d 25]). Squire Sanders further avers that where, as here, the insurer wrongfully refused to defend the insured or to afford Cumis counsel, the insured may proceed as he or she deems appropriate, and the insurer forfeits all right to control the insured’s defense, including the right to determine litigation strategy. (See, e.g., Stalberg v. Western Title Ins. Co. (1991) 230 Cal.App.3d 1223, 1233 [282 Cal.Rptr. 43]; cf. James 3 Corp. v. Truck Ins. Exchange (2001) 91 Cal.App.4th 1093, 1103, fn. 3 [111 Cal.Rptr.2d 181] [holding, in inadequate defense suit by insured against insurer, that insurer’s right to control non-Cumis defense “necessarily encompasses the right to determine what measures are cost effective”].) Squire Sanders insists that Cumis counsel’s independence, zeal, and undivided loyalty to the insureds would be unduly compromised if, while conducting their clients’ defense, counsel faced the chilling prospect of the insurer’s lawsuit challenging, in hindsight, the reasonableness of counsel’s efforts.
This argument is not convincing. Although Cumis counsel must indeed retain the necessary independence to make reasonable choices when representing their clients, such independence is not inconsistent with an obligation of counsel to justify their fees. In numerous settings in our legal system, the attorneys representing their clients know they will later have to justify their fees to a third party — including cases brought under fee-shifting statutes, class action settlements, probate, and bankruptcy. (Chavez v. City of Los Angeles (2010) 47 Cal.4th 970, 975-976 [104 Cal.Rptr.3d 710, 224 P.3d 41] (Chavez); Concepcion v. Amscan Holdings, Inc. (2014) 223 Cal.App.4th 1309, 1314-1315 [168 Cal.Rptr.3d 40] (Concepcion); Estate ofTrynin (1989) 49 Cal.3d 868, 873 [264 Cal.Rptr. 93, 782 P.2d 232]; 11 U.S.C. § 330(a).) Squire Sanders offers no convincing explanation for why attorney independence is possible in these settings, but not here.
What is more, the very statute codifying the Cumis doctrine already contemplates that counsel will be called upon to justify their fees. Section 2860 specifically addresses the possibility of disputes about Cumis counsel’s fees and provides for resolution of those disputes. By its terms, the statute limits neither the potential “parties to the dispute” (§ 2860, subd. (c)) nor the billing issues that may be raised. Because counsel are billing the insurer, and the insurer is sending its checks to counsel, such a dispute may well arise directly between the insurer and counsel. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2014) ¶ 7:809, p. 7B-121 *1003 [“ ‘Parties to the dispute’ presumably includes the Cumis counsel, in addition to the insurer and insured.”].) Thus, under the Cumis statutory scheme itself, counsel face the prospect that insurers may question and resist their bills, and insurers are not precluded from doing so in a proceeding directly against counsel.
Squire Sanders counters by suggesting that fee disputes under section 2860 “usually” stand in stark contrast to the circumstances of this case. Those disputes, Squire Sanders claims, tend to involve insureds'1 attempts to secure payment by their insurers of Cumis counsel’s bills. And disputes are limited to the hourly fee rate cap set forth in the statute. But nothing in the statute itself limits the parties or the issues in a section 2860 fee dispute in this manner. Indeed, cases involving arbitration under section 2860 suggest both that Cumis counsel are sometimes a party to the arbitration and that the issues to be arbitrated sometimes include whether Cumis counsel’s fees are reasonable and necessary. (Cf., e.g., Janopaul + Block Companies, LLC v. Superior Court (2011) 200 Cal.App.4th 1239, 1244 [133 Cal.Rptr.3d 380] [upholding, on unrelated grounds, denial of insurer’s motion to compel insured and Cumis counsel to arbitrate insurer’s claims that insurer was entitled to reimbursement of fees above those “reasonable and necessary” for insured’s defense]; Long v. Century Indemnity Co. (2008) 163 Cal.App.4th 1460, 1465-1466 [78 Cal.Rptr.3d 483] [finding arbitrable a fee dispute between Cumis counsel and insurer regarding counsel’s right to receive a higher fee than that provided for in § 2860, subd. (c)].)
Squire Sanders also suggests that the process in place when Cumis counsel’s representation is governed by section 2860 is preferable to a rule allowing the insurer to obtain reimbursement of unreasonable fees under principles of restitution. The “more collaborative” system established by section 2860, Squire Sanders contends, mitigates the risk that an insurer’s questioning of counsel’s fees will undermine counsel’s independence. But it is far from self-evident that section 2860 codifies a “more collaborative process” among the insurer, insured, and counsel. By its terms, section 2860 comes into play only when the interests of the insurer and the insured are so at odds that “the outcome of [a disputed] coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim . . . .” (§ 2860, subd. (b).) Section 2860 is not triggered simply because an insurer defends under a reservation of rights, the underlying litigation alleges facts under which the insurer would deny coverage, or the litigation includes claims for punitive damages or damages in excess of policy limits. (Ibid.; see Gafcon, Inc. v. Ponsor & Associates (2002) 98 Cal.App.4th 1388, 1421 [120 Cal.Rptr.2d 392] [“[C]ourts of [A]ppeal, including ours, repeatedly recognize a conflict of interest does not arise every time the insurer proposes to provide a defense under a reservation of rights. There must also be evidence that ‘the outcome of [the] coverage issue can be controlled by counsel first retained by the insurer for the *1004 defense of the [underlying] claim.’ ”].) Given that section 2860 comes into play only when there exists a real and significant disjuncture between the interests of an insurer and its insured, we fail to see how the degree of tension in the relationship between Hartford and the insureds in this case— even if purportedly higher than in cases where section 2860 is triggered— meaningfully heightens any threat to Cumis counsel’s independence.
Section 2860 is preferable as well, Squire Sanders claims, because it provides for contemporaneous resolution of fee disputes as they arise during the course of the underlying lawsuit against the insureds. Squire Sanders asserts that contemporaneous proceedings intrude less on counsel’s independence than after-the-fact litigation, because a contemporaneous proceeding provides “real-time guidance to counsel about which activities [they] may undertake,” without raising the concern that counsel will “hav[e] the rug pulled out from under [them] years after the fact by the insurer.”
These concerns about timing are speculative at best. For one thing, although nothing in the language of section 2860 forecloses the contemporaneous resolution of fee disputes, nothing requires it. In any event, there is no obvious reason why, if Cumis counsel can be required to defend their bills while simultaneously representing their clients, counsel should not equally be able to defend their bills after the third party litigation has concluded. Indeed, Cumis counsel might even prefer to defend their bills only after the third party litigation has ended insofar as this would allow counsel to devote their full attention to the insureds’ defense while the third party suit is in progress, rather than becoming embroiled in side arguments with the insurer over fees.
But we need express no final views on the relative merits of contemporaneous versus after-the-fact resolution of fee disputes. As noted previously, the 2006 enforcement order, drafted by Squire Sanders, upheld on appeal, and now final, specifically reserved Hartford’s right to seek reimbursement of unreasonable legal charges after the third party litigation had concluded. This final order is dispositive, for purposes of the instant case, of the timing of Hartford’s claim for reimbursement.[9]
*1005 Squire Sanders next argues that, because of the exclusive attorney-client relationship between Cumis counsel and the insureds, the insureds alone have the authority and responsibility to monitor and control counsel’s expenditures on their behalf. Thus, if the insureds fail to prevent Cumis counsel from submitting unreasonable and excessive bills to the insurer, Squire Sanders reasons that the insureds should bear the consequences of this failure— subject to a right of cross-indemnity against counsel.
This argument all but ignores the realities of cases like the one before us. Squire Sanders acknowledges that the insureds in this case were not sophisticated, frequent litigators accustomed to monitoring their counsel’s day-to-day litigation decisions. Having contracted with Hartford, and having paid premiums, to be spared the fees and expenses of their defense, there is no indication that the insureds had reasonable cause to expect that they would nonetheless face exposure if Squire Sanders submitted unreasonable and excessive bills to Hartford. Nor is there any indication the insureds expected that they would have to mount and finance a separate litigation against their own counsel in order to have any hope of recovering the funds they were ordered to pay to the insurer as a result of counsel’s unreasonable billing. Such a circuitous, complex, and expensive procedure serves neither fairness nor any other policy interest. We see no persuasive ground to hold that any direct liability to Hartford for bill padding by Squire Sanders must fall solely on the insureds.
Also unavailing is Squire Sanders’s contention that its due process rights would be affected by allowing Hartford to recover directly from Cumis counsel. Such rights would be violated, Squire Sanders asserts, if the insureds’ refusal to waive attorney-client privilege prevents counsel from effectively defending against an insurer’s claims for reimbursement. This concern appears to be hypothetical, as Squire Sanders does not contend that the defense of its bills in this litigation hinges on any issue that implicates attorney-client privilege.[10] In any case, an objective assessment of the litigation as a whole to determine whether counsel’s bills appear fundamentally reasonable is unlikely to involve an examination of individual attorney-client communications or the minute details of every litigation decision. If privileged information on these subjects is included in counsel’s billing records, it can be redacted for purposes of assessing whether counsel’s bills *1006 are reasonable. (See, e.g., Concepcion, supra, 223 Cal.App.4th at p. 1327 [party’s claim of attorney-client privilege with respect to billing records did not justify failing to provide records to defendant in dispute over attorney’s fees; bills could simply be redacted to delete confidential information]; Banning v. Newdow (2004) 119 Cal.App.4th 438, 454 [14 Cal.Rptr.3d 447] [rejecting father’s claim in child custody dispute that bills submitted by mother’s counsel, redacted to protect attorney-client and work product privileges, “left him unable to challenge the reasonableness of the fees”].) Trial courts are accustomed to dealing with claims of attorney-client privilege in a manner that balances the competing interests of the parties, and can thus presumably address any privilege issues that arise on a case-by-case basis.
Finally, Squire Sanders insists that allowing an insurer to seek direct reimbursement from Cumis counsel would contravene California’s established prohibition on the assignment of legal malpractice claims. (See generally, e.g., Musser, supra, 28 Cal.4th at p. 287.) This prohibition “ ‘protects] the integrity of the uniquely personal and confidential attorney-client relationship.’ ” (Ibid.) It also guards against the unseemly and burdensome commercialization of claims arising from professional duties owed by an attorney exclusively to his or her client. (See Fireman’s Fund Ins. Co. v. McDonald, Hecht & Solberg (1994) 30 Cal.App.4th 1373, 1379 [36 Cal.Rptr.2d 424]; Kracht v. Perrin, Gartland & Doyle (1990) 219 Cal.App.3d 1019, 1023-1024 [268 Cal.Rptr. 637].)
As Hartford points out, however, this case is quite different. Hartford does not seek to stand in the insureds’ shoes in order to assert a claim that counsel violated a duty to the insureds by performing deficiently on their behalf. Nor does Hartford seek commercial gain by trading in a claim that, by its nature, belongs uniquely and personally to the insureds. On the contrary, Hartford is attempting to recover legal charges it paid, under court order, to counsel for their services to the insureds — fees Hartford now contends were excessive for the work that was done.
And as Hartford asserts in response to the concerns Squire Sanders raises about a direct action against Cumis counsel, after-the-fact scrutiny of Cumis counsel’s charges should indeed be quite limited. Hartford agrees that counsel must be “free to represent the insured as [they] see[] fit, subject only to generally applicable legal provisions and professional standards.” (Buss, supra, 16 Cal.4th at p. 58.) Hence, Hartford argues, the proper test for any hindsight claim of excessive billing is the same as for a contemporaneous challenge — i.e., whether the charges were objectively reasonable at the time they were incurred, under the circumstances then known to counsel. (Cf., e.g., Chavez, supra, 47 Cal.4th at pp. 990-991 [in determining if fee award is unduly inflated, court may consider whether, viewing the scope of the *1007 litigation as a whole, the award exceeds “the amount of time an attorney might reasonably [have been] expect[ed] to spend” thereon]; Aerojet-General Corp. v. Transport Indemnity Co. (1997) 17 Cal.4th-38, 62-63 [70 Cal.Rptr.2d 118, 948 P.2d 909] [insured’s investigation costs are payable by insurer as part of insurer’s duty to defend if, “assessed under an objective standard,” the investigation would have been conducted, and the expenses incurred, by a “reasonable insured under the same circumstances” in an effort to avoid or minimize liability].) We agree that Hartford sets forth the appropriate standard for fee disputes of the kind at issue here. We add that the burden to prove that Cumis counsel’s fees were in fact unreasonable and unnecessary falls entirely on the insurer.
When the insurer seeks to carry that burden in a case such as this one, however, the insurer may proceed directly against Cumis counsel in its reimbursement action. We emphasize that this conclusion is a limited one, and a particularly apposite one given the history of this litigation. The trial court’s 2006 enforcement order plainly permits Hartford to pursue someone for reimbursement of allegedly excessive legal charges. The clarity and finality of this order removes from our consideration the question whether Hartford, as a “breaching” insurer that was arguably caught shirking its defense duties, ought to be able to pursue anyone for alleged overpayments. Similarly off the table is the question of whether the trial court ought to have cut Hartford off from section 2860’s arbitration provisions, even as a sanction for its breach. Thus, to the extent Squire Sanders or its amici curiae perceive unfairness in the conclusion that a breaching insurer cut off from the protections of section 2860 should nevertheless retain the right to recoup allegedly excessive legal charges in a later court proceeding, any such unfairness stems from the 2006 enforcement order and not from our holding here. Taking the 2006 enforcement order as we find it, we conclude that equitable principles of restitution and unjust enrichment dictate that Hartford may seek reimbursement for the allegedly unreasonable and unnecessary defense fees directly from Squire Sanders.
Squire Sanders’s own conduct in the course of this litigation further supports our conclusion that it is not unjust to allow Hartford to pursue its reimbursement action directly against Squire Sanders. Squire Sanders drafted the very order that expressly preserved Hartford’s right to pursue reimbursement for excessive fees and grounded that reimbursement right in principles of restitution and unjust enrichment. Our holding that Hartford may pursue its claim for reimbursement against Squire Sanders stems directly from — and is wholly consistent with — that order. Squire Sanders now attempts to avoid the effects of this order by encouraging us to foist all responsibility for reimbursement onto its erstwhile clients, but we see no reason to accept that invitation. Under the circumstances, allowing Hartford to pursue a narrow claim for reimbursement against Squire Sanders under the terms of the 2006 *1008 enforcement order neither rewards an undeserving insurer nor penalizes unsuspecting Cumis counsel.
III. Disposition
The judgment of the Court of Appeal is reversed insofar as it upheld the dismissal of Squire Sanders from Hartford’s cross-suit, and is otherwise affirmed.
Cantil-Sakauye, C. J., Werdegar, J., Chin, J., Corrigan, J., and Kruger, J., concurred.

 The Cumis decision held that where the insurer provides a defense, but reserves the right to contest indemnity liability under circumstances suggesting that the insurer’s interest may diverge from that of its insured, a conflict arises between insured and insurer. In such circumstances, a single counsel cannot represent both the insurer and the insured unless the insured gives informed consent. Absent the insured’s consent to joint representation, the insurer must pay the insured’s “reasonable cost” for hiring independent counsel to represent the insured’s litigation interests under the insured’s control. (Cumis, supra, 162 Cal.App.3d at p. 375.)

 Subsequent unlabeled statutory references are to the Civil Code.

 The name of this firm has recently been changed to Squire Patton Boggs (US) LLP. To avoid confusion, this opinion refers to the firm by its former name, which was in use throughout the bulk of the litigation.

 In section 2860, the Legislature sought to codify and flesh out the independent counsel requirements of the Cumis decision. The statute provides, among other things, that the insurer’s obligation to pay fees to Cumis counsel “is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended.” (§ 2860, subd. (c).) The statute specifies that any dispute concerning attorney’s fees “shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute.” (Ibid.)

 The trial court also (1) sustained the demurrer to the unjust enrichment and accounting causes of action as to all the cross-defendants, and (2) overruled the demurrer to the reimbursement and rescission causes of action as to the remaining cross-defendants.

 Hartford did not seek review of the dismissal of Harrington as a cross-defendant.

 In addressing this narrow “direct right” question, we note, but do not decide, three questions suggested by the procedural posture of this case. As indicated above, the trial court’s 2006 enforcement order, requiring Hartford to promptly pay Cumis counsel’s bills, specified that Hartford “is . . . not permitted to take advantage of Section 2860.” Nevertheless, the order stated that counsel’s bills “still must be necessary and reasonable” and that, “[t]o the extent Hartford seeks to challenge fees and costs as unreasonable or unnecessary, it may do so by way of reimbursement after resolution of the [Marin County action].” (Italics added.) In light of the 2006 enforcement order’s express provision authorizing Hartford to seek reimbursement for excessive fees, we need not and do not decide here whether, absent such an order, an insurer that breaches its defense obligations has any right to recover excessive fees it paid Cumis counsel.
Next, section 2860 specifies that disputes concerning the fees charged by Cumis counsel are to be resolved by final and binding arbitration. (§ 2860, subd. (c).) In contrast, the 2006 enforcement order provided that any dispute over allegedly excessive fees would be addressed in a court action. Because the 2006 enforcement order is final and not subject to our review, and because Squire Sanders has raised no issue about the effect of section 2860’s arbitration provision on the current litigation, we do not decide whether, in general, a dispute over allegedly excessive fees is more appropriately decided through a court action or an arbitration.
Finally, because the 2006 enforcement order expressly stated that resolution of any fee dispute would take place after the underlying litigation concluded, we do not decide when such fee disputes generally ought to be decided relative to the underlying litigation.

 Amicus curiae briefs generally supporting Hartford’s right to recover excessive billings directly from Squire Sanders in this proceeding have been filed by (1) Complex Insurance Claims Litigation Association and American Insurance Association and (2) J.R. Marketing, lane Ratto, and Robert Ratto. Amicus curiae briefs generally opposing Hartford’s right to recover excessive billings directly from Squire Sanders in this proceeding have been filed by (1) Centex Homes, a Nevada partnership; (2) Attorney Steven W. Murray; (3) California Building Industry Association; (4) California Insureds Counsel; and (5) Montrose Chemical Corporation.

 Squire Sanders makes a related argument that allowing Hartford’s suit will create a perverse incentive for insurers to breach their duties to defend their insureds. Squire Sanders reasons that, having forfeited, as a “breaching insurer,” the protections of section 2860, Hartford would now be placed in a better position than under the statute by a rule permitting it to evaluate the worth of counsel’s efforts in hindsight. Hartford responds that it would not be tempted to deliberately breach its obligations, expose itself to claims of tortious bad faith, and forfeit the protections of section 2860 merely to gain an opportunity to contest counsel’s bills in an after-the-fact reimbursement action. As explained above (see ante, at pp. 999-1000 & p. 997, fn. 7), we are not here deciding when, and in what forum, a breaching insurer may challenge the legal bills presented by Cumis counsel. The sole issue before us is whether, assuming the insurer may seek reimbursement of allegedly excessive, unreasonable, and *1005 unnecessary charges from a court after the underlying litigation has concluded, the insurer may seek such reimbursement directly from counsel.

 On a related front, Squire Sanders does not argue, and the record does not suggest, that any of the allegedly excessive fees it incurred in defending the Marin County, Nevada, and Virginia actions were incurred on the insureds’ explicit direction or undertaken in order to benefit the insured in some way unrelated to avoiding or minimizing liability in the underlying litigation.